1   Robert Drexler (SBN 119119)
    Robert.Drexler@CapstoneLawyers.com
2   Molly DeSario (SBN 230763)
    Molly.DeSario@CapstoneLawyers.com
3   Jonathan Lee (SBN 267146)
    Jonathan.Lee@CapstoneLawyers.com
4   Capstone Law APC
    1875 Century Park East, Suite 1000
5   Los Angeles, California 90067
    Telephone:  (310) 556-4811
6   Facsimile:  (310) 943-0396

7   Attorneys for Plaintiffs Daniel Cuevas
    and Alexis Zepeda Coutts
8

9                UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  DANIEL CUEVAS and ALEXIS          Case No.:  5:22-CV-01953-JGB-SPx
    ZEPEDA COUTTS, individually, and
13  on behalf of other members of the  **FIRST AMENDED CLASS ACTION**
    general public similarly situated, and  **COMPLAINT & ENFORCEMENT**
14  as aggrieved employees pursuant to  **ACTION UNDER THE PRIVATE**
    the Private Attorneys General Act  **ATTORNEYS GENERAL ACT,**
15  ("PAGA"),                          **CALIFORNIA LABOR CODE**
                                       **§§ 2698, *ET SEQ.***
16              Plaintiffs,

17       vs.                          (1) Violation of California Labor Code
                                           §§ 510 and 1198 (Unpaid Overtime);
18  CLAIRE'S BOUTIQUES, INC., a        (2) Violation of California Labor Code
    Michigan corporation; and DOES 1       §§ 1182.12, 1194, 1197, 1197.1, and
19  through 10, inclusive,                 1198 (Unpaid Minimum Wages);
                                       (3) Violation of California Labor Code
20              Defendants.                §§ 226.7, 512(a), 516, and 1198
                                           (Failure to Provide Meal Periods);
21                                     (4) Violation of California Labor Code
                                           §§ 226.7, 516, and 1198 (Failure to
22                                         Authorize and Permit Rest Periods);
                                       (5) Violation of California Labor Code
23                                         §§ 226(a), 1174(d), and 1198 (Non-
                                           Compliant Wage Statements and
24                                         Failure to Maintain Payroll Records);
                                       (6) Violation of California Labor Code
25                                         § 227.3 (Failure to Pay Vested
                                           Vacation Time and Paid Time Off
26                                         Upon Termination);
                                       (7) Violation of California Labor Code
27                                         §§ 201 and 202 (Wages Not Timely
                                           Paid Upon Termination);
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(8) Violation of California Labor Code § 204 (Failure to Timely Pay Wages During Employment);

(9) Violation of Labor Code § 1198 and California Code of Regulations, Title 8, Section 11070 Subdivision 5(A) (Failure to Provide Reporting Time Pay);

(10)  Violation of California Labor Code § 2802 (Unreimbursed Business Expenses);

(11)  Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§ 2698, *et seq.*;

(12)  Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and

(13)  Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

---

1    Plaintiffs Daniel Cuevas and Alexis Zepeda Coutts, individually and on

2    behalf of all other members of the public similarly situated, and as aggrieved

3    employees and on behalf of all aggrieved employees, allege as follows:

4                            **JURISDICTION AND VENUE**

5        1.    This class action is brought pursuant to Rule 23 of the Federal Rules

6    of Civil Procedure to recover wages and all other available relief on behalf of

7    Plaintiffs and all similarly situated current and former non-exempt, hourly paid

8    employees of Defendants, and a non-class representative enforcement action

9    brought pursuant to the Labor Code Private Attorneys General Act of 2004,

10   California Labor Code sections 2698, *et seq*. ("PAGA") to recover civil penalties

11   and any other available relief on behalf of Plaintiffs, the State of California, and

12   other current and former employees who worked for Defendants in California as

13   non-exempt, hourly paid employees and received at least one wage statement and

14   against whom one or more violations of any provision in Division 2 Part 2

15   Chapter 1 of the Labor Code or any provision regulating hours and days of work

16   in the applicable Industrial Welfare Commission ("IWC") Wage Order were

17   committed, as set forth in this complaint.

18       2.    This Court has original jurisdiction in this action pursuant to 28

19   U.S.C. § 1332(d) and based on 28 U.S.C. §§ 1441, 1446.

20       3.    Venue is proper in this Court, because this case was originally filed

21   in the Superior Court of California for the County of San Bernardino.  Venue

22   properly lies in the United States District Court for the Central District of

23   California pursuant to 28 U.S.C. §§ 84(a), 1391(b), and 1441(a).

24       4.    The PAGA statute authorizes aggrieved employees to sue directly as

25   the proxy of the State of California for civil penalties for violations of various

26   provisions in the California Labor Code.

27                                 **THE PARTIES**

28       5.    Plaintiff Daniel Cuevas ("Plaintiff Cuevas") is a resident of Rancho

Cucamonga, in San Bernardino County, California.  Defendants employed Plaintiff Cuevas as an hourly paid, non-exempt Third Key Holder from approximately December 2018 to February 2022.  Plaintiff Cuevas worked for Defendants at their retail store located in Ontario, California.  During his employment, Plaintiff Cuevas typically worked five (5) or more hours per day and up to five (5) days per week.  Plaintiff Cuevas's primary job duties included, without limitation, opening and closing the store, completing bank deposits, making sales, assisting customers, performing ear piercings, cleaning and organizing the stockroom, handling incoming shipments, and traveling to off-site storage units and other store locations to pick up or drop off merchandise.

6.    Plaintiff Alexis Zepeda Coutts ("Plaintiff Zepeda Coutts") is a resident of Rancho Cucamonga, in San Bernardino County, California. Defendants employed Plaintiff Zepeda Coutts as an hourly paid, non-exempt Third Key and Assistant Store Manager from approximately April 2021 to June 2022.  Plaintiff Zepeda Coutts worked for Defendants at their retail store located in Ontario, California.  During her employment, Plaintiff Zepeda Coutts typically worked four (4) to eight (8) hours per day and four (4) to five (5) days per week. Plaintiff Zepeda Coutts's primary job duties included, without limitation, handling ear piercings, providing customer service, making sales, cleaning the store and taking out the trash, completing store paperwork, and logging shipments.

7.    CLAIRE'S BOUTIQUES, INC. was and is, upon information and belief, a Michigan corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

8.    Plaintiffs are unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously

named Defendants once their names and capacities become known.

9.    Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10 were the partners, agents, owners, or managers of CLAIRE'S BOUTIQUES, INC. at all relevant times.

10.    Plaintiffs are informed and believe, and thereon allege, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, CLAIRE'S BOUTIQUES, INC. and/or DOES 1 through 10 (collectively, "Defendants" or "CLAIRE'S"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

11.    At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

12.    Plaintiffs are informed and believe, and thereon allege, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

**GENERAL ALLEGATIONS**

13.    Defendants are a specialty retailer of jewelry and accessories for young women, teens, tweens, and kids.  Defendants own and operate approximately 1,400 store locations in the United States, including approximately 130 retail store locations California.  Upon information and belief, Defendants maintain a single, centralized Human Resources ("HR") department at their company headquarters in Pembroke Pines, Florida, which is responsible for the recruiting and hiring of new employees, and communicating

and implementing Defendants' company-wide policies, including timekeeping policies and meal and rest period policies, to employees throughout California.

14.     In particular, Plaintiffs and class members, on information and belief, received the same standardized documents and/or written policies.  Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions.  Upon information and belief, Defendants set forth uniform policies and procedures in several documents provided at an employee's time of hire.

15.     Upon information and belief, Defendants maintain a centralized Payroll department at their company headquarters in Pembroke Pines, Florida, which processes payroll for all non-exempt, hourly paid employees working for Defendants at their various locations in California, including Plaintiffs and class members.  Based upon information and belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid employees in California, irrespective of their work locations.  Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

16.     Defendants continue to employ non-exempt or hourly paid employees in California.

17.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

18.     Plaintiffs are informed and believe, and thereon allege, that

Plaintiffs and class members were not paid for all hours worked because all hours worked were not recorded.

19.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

20.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiffs and class members were not paid at least minimum wages for work done off-the-clock.

21.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to meal periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiffs and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

22.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to rest periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.  In violation of the California Labor Code, Plaintiffs and class members were not authorized and permitted to take compliant rest periods,

nor did Defendants provide Plaintiffs and class members with payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

23.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive complete and accurate wage statements in accordance with California law.  In violation of the California Labor Code, Plaintiffs and class members were not provided complete and accurate wage statements.

24.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the California Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

25.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that they were required to pay departing employees all vested vacation wages that were owed to them at the end of their employment.  In violation of the California Labor Code, Defendants failed to pay Plaintiffs and class members all vested vacation wages at the end of their employment, causing a forfeiture of vested vacation wages.

26.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to timely payment of all wages earned upon termination of employment. In violation of the California Labor Code, Plaintiffs and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, all vested vacation wages, sick leave pay, and/or reporting time pay, within permissible time periods.

27.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were

entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiffs and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, sick leave pay, and/or reporting time pay within permissible time periods.

28.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiff Zepeda Coutts and class members were entitled to receive sick leave benefits to be paid at a regular rate of pay, that included, as eligible income, all income derived from hazard pay, incentive pay, nondiscretionary bonuses, and/or other forms of compensation.  In violation of the California Labor Code, Defendants failed to include all forms of remuneration in calculating the regular rate of pay for sick leave pay.

29.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that they were not permitted to compel or coerce Plaintiffs and/or class members to patronize their business in the purchase of anything of value, but did, in fact, require Plaintiffs and/or class members to purchase various items, including uniform items, from Defendants.

30.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive all reporting time pay when Plaintiffs and class members were required to report to work but were put to work for less than half of their usual or scheduled shift.  In violation of the California Labor Code and applicable IWC Wage Order, Plaintiffs and class members were not paid all reporting time pay.

31.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiff Cuevas and class members were entitled to be paid a split-shift premium when they returned to work for an additional shift in the same day, after having been clocked out for more than an hour.  In violation of the California Labor Code and applicable IWC Wage

FIRST AMENDED CLASS ACTION COMPLAINT

1   Order, Defendants did not pay Plaintiff Cuevas and class members an additional
2   hour at minimum wage when they worked split-shifts.

3       32.    Plaintiffs are informed and believe, and thereon allege, that
4   Defendants knew or should have known that Plaintiffs and class members were
5   entitled to suitable resting facilities to cease work and recover during meal or
6   rest periods, but failed to provide suitable resting facilities.

7       33.    Plaintiffs are informed and believe, and thereon allege, that
8   Defendants knew or should have known that Plaintiffs and class members were
9   entitled to receive full reimbursement for all business-related expenses and costs
10  they incurred during the course and scope of their employment and that they did
11  not receive full reimbursement of applicable business-related expenses and costs
12  incurred.

13      34.    Plaintiffs are informed and believe, and thereon allege, that at all
14  times herein mentioned, Defendants knew or should have known that they had a
15  duty to compensate Plaintiffs and class members for all hours worked, and that
16  Defendants had the financial ability to pay such compensation, but willfully,
17  knowingly, and intentionally failed to do so, and falsely represented to Plaintiffs
18  and class members that they were properly denied wages, all in order to increase
19  Defendants' profits.

20                    **PAGA REPRESENTATIVE ALLEGATIONS**

21      35.    At all times herein set forth, PAGA provides that any provision of
22  law under the Labor Code and applicable IWC Wage Order that provides for a
23  civil penalty to be assessed and collected by the LWDA for violations of the
24  California Labor Code and applicable IWC Wage Order may, as an alternative,
25  be recovered by aggrieved employees in a civil action brought on behalf of
26  themselves and other current or former employees pursuant to procedures
27  outlined in California Labor Code section 2699.3.

28      36.    PAGA defines an "aggrieved employee" in Labor Code section

2699(c) as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

37.    Plaintiffs and other current and former employees of Defendants are "aggrieved employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current or former employees and one or more of the alleged violations were committed against them.

38.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiffs, may pursue a civil action arising under PAGA after the following requirements have been met:

> (a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

> (b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

> (c)    The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation ("LWDA Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

39.   Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiffs, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a)   The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b)   An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)   The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved employee or representative.  The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence.  If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

40.   On December 21, 2022, Plaintiff Cuevas provided written notice by online filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including

facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3.  Plaintiff Cuevas's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA Administrator confirmed receipt of Plaintiff Cuevas's written notice and assigned Plaintiff Cuevas PAGA Case Number LWDA-CM-925610-22.  A true and correct copy of Plaintiff Cuevas's written notice to the LWDA and Defendants is attached hereto as "Exhibit 1."

41.    On December 21, 2022, Plaintiff Zepeda Coutts provided written notice by online filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3.  Plaintiff Zepeda Coutts's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA Administrator confirmed receipt of Plaintiff Zepeda Coutts's written notice and assigned Plaintiff Zepeda Coutts PAGA Case Number LWDA-CM-925611-22.  A true and correct copy of Plaintiff Zepeda Coutts's written notice to the LWDA and Defendants is attached hereto as "Exhibit 2."

42.    As of the filing date of this complaint, over 65 days have passed since Plaintiffs sent the notices described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiffs' claims and Defendants have not cured the violations.

43.    Thus, Plaintiffs have satisfied the administrative prerequisites under California Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 227.3, 246, 450, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

44.    Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section

of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ." Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

45.   Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiffs' and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

46.   As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

47.   Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), and 2699.5, and section 558, Plaintiffs, acting in the public interest as private attorneys general, seek assessment and collection of civil penalties for themselves, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 227.3, 246, 450, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

## CLASS ACTION ALLEGATIONS

48.   Plaintiffs bring this action on their own behalf, as well as on behalf of each and all other persons similarly situated, and thus seek class certification under Rule 23 of the Federal Rules of Civil Procedure.

49.   All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

50.    Plaintiffs' proposed class consists of and is defined as follows:

All persons who worked for Defendants as non-exempt, hourly paid employees in California, at any time from March 10, 2021, until the date of trial ("Class").

51.    Plaintiffs' proposed subclass consists of and is defined as follows:

All persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass").

52.    Members of the Class and Subclass are referred to herein as "class members."

53.    Plaintiffs reserve the right to redefine the Class and Subclass and to add additional subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

54.    This action is brought and properly may be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

55.    According to Defendants' removal papers, there are at least 2,300 non-exempt, hourly paid employees working for Defendants across California during the relevant period.  Thus, it is reasonable to presume that the members of the class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

56.    Plaintiffs' claims are typical of those of the class members, because Plaintiffs suffered the violations set forth in this First Amended Complaint.

57.    Plaintiffs will adequately protect the interests of class members. Plaintiffs have no interests that are adverse to or conflict with class members and are committed to the vigorous prosecution of this action.  To that end, Plaintiffs have retained counsel who is competent and experienced in handling class

FIRST AMENDED CLASS ACTION COMPLAINT

1    actions on behalf of employees.

2        58.    A class action is superior to all other available methods for the fair

3    and efficient adjudication of this controversy since joinder of all members is

4    impracticable.  Furthermore, as the amount suffered by individual class members

5    may be relatively small, the expense and burden of individual litigation make it

6    impossible for members of the Class to individually redress the wrongs done to

7    them.  There will be no difficulty in the management of this case as a class

8    action.

9        59.    There are common questions of law and fact as to class members

10   that predominate over questions affecting only individual members, including,

11   but not limited to:

12              (a)    Whether Defendants required Plaintiffs and class members to

13                     work over eight (8) hours per day, over twelve (12) hours per

14                     day, or over forty (40) hours per week and failed to pay all

15                     legally required overtime compensation to Plaintiffs and class

16                     members;

17              (b)    Whether Defendants failed to pay Plaintiffs and class

18                     members at least minimum wages for all hours worked;

19              (c)    Whether Defendants failed to provide Plaintiffs and class

20                     members with meal periods;

21              (d)    Whether Defendants failed to authorize and permit Plaintiffs

22                     and class members to take rest periods;

23              (e)    Whether Defendants provided Plaintiffs and class members

24                     with complete and accurate wage statements as required by

25                     California Labor Code section 226(a);

26              (f)    Whether Defendants maintained accurate payroll records as

27                     required by California Labor Code section 1174(d);

28              (g)    Whether Defendants failed to pay Plaintiffs and class

members all vested vacation time upon their termination;

(h)    Whether Defendants failed to pay earned overtime wages, minimum wages, meal and rest period premiums, sick leave pay, and/or reporting time pay due to Plaintiffs and class members upon their discharge;

(i)    Whether Defendants failed to timely pay overtime wages, minimum wages, meal and rest period premiums, sick leave pay, and/or reporting time pay to Plaintiffs and class members during their employment;

(j)    Whether Defendants failed to properly calculate the "regular rate" of pay upon which Plaintiff Zepeda Coutts's and class members' sick leave rate of pay was based;

(k)    Whether Defendants compelled and/or coerced Plaintiffs and/or class members to patronize their business;

(l)    Whether Defendants required Plaintiffs and class members to report to work, but failed to provide them with work or provided them with less than half their usual or scheduled day's work, without properly compensating them as required by California Code of Regulations, Title 8, section 11070(5);

(m)    Whether Defendants required Plaintiff Cuevas and class members to return to work for an additional shift in the same day, after having been clocked out for more than an hour, without paying Plaintiff Cuevas and class members an additional hour of pay at the minimum wage as required by California Code of Regulations, Title 8, section 11070(4)(C);

(n)    Whether Defendants failed to provide Plaintiffs and class members with suitable resting facilities;

(o)    Whether Defendants failed to reimburse Plaintiffs and class

members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(p)    Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(q)    The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

## FIRST CAUSE OF ACTION

### Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime
### (Against all Defendants)

60.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

61.    Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

62.    California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

63.    Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiffs and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek,

at the rate of time and one-half (1 ½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

64.    The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiffs and class members working more than twelve (12) hours in a day, overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

65.    California Labor Code section 510 codifies the right to overtime compensation at one and one-half (1 ½) times the regular rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

66.    During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiffs and class members.  During the relevant time period, Plaintiffs and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

67.    First, during the relevant time period, Defendants had a policy and/or practice of discouraging and impeding Plaintiffs and class members from recording hours worked that were outside of their scheduled shifts in order to limit the amount of overtime employees could accrue.  On information and belief, this limitation on overtime accrual was based on a company-wide policy of staffing store locations strictly based on the labor hours or labor budget set by corporate.  This policy of limiting overtime, coupled with Defendants'

understaffing policy, as well as the assignment of sales quotas and heavy workloads (*see infra*), led Plaintiffs and class members to work off-the-clock before and after their scheduled shifts in order to complete their assigned tasks.

68.    As a result of this restriction on overtime accrual, Defendants forced Plaintiffs and class members to perform work off-the-clock outside of their scheduled shifts, such as performing opening duties, including vacuuming and cleaning the store; reviewing email communications; setting up for ear piercings; cleaning the backroom; assisting customers; choosing accessories from the store's sales floor to wear for the day, scanning them into the system, and donning them; and/or completing training assignments before clocking in for their scheduled shifts.  As a further example, after clocking out, Plaintiffs and class members performed work, such as performing closing shift duties, including cleaning and locking the store, taking out the trash, driving to the bank and depositing money from the cash register, setting up for the store layout update or for opening the next day, and completing closing paperwork; and/or responding to phone calls and text messages from management on their personal cellular phones.  Moreover, before or after Plaintiff Cuevas's scheduled shifts or on his off-days, Plaintiff Cuevas would travel to a nearby storage unit or another store location to pick up and drop off merchandise, but was not paid for this time spent working.  Thus, Defendants failed to track this time spent working before and after scheduled shifts, and Plaintiffs and class members received no or incomplete compensation for this time.

69.    Second, during the relevant period, Defendants had a company-wide "on-call" policy, whereby they scheduled Plaintiffs and class members to work "on-call," or on standby.  These "on-call" shifts worked to Defendants' benefit and to the detriment of Plaintiffs and class members.  By utilizing "on-call" shifts, Defendants received the benefit of being able to maximize revenue by having a standby workforce they could choose to utilize or not, depending on

store traffic and sales metrics, without incurring the cost of compensating employees who show up to work and work a full or partial scheduled day's work.

70.     When scheduled for an "on-call" or standby shift, Plaintiffs and class members were required to wait for the store to call them 1-2 hours prior to their scheduled standby shift.  Plaintiffs and class members were engaged to wait and could not engage in personal activities as they had to be ready to travel to their respective store locations on short notice and work their standby shift. When scheduled to be "on-call" for a standby shift, Plaintiffs and class members were controlled by Defendants because they were forced to put their lives on hold and could not use that time freely for their own purposes.  For example, Plaintiffs refrained from making plans altogether while "on-call" for a standby shift because they knew that they had to drop whatever they were doing at a moment's notice if they were instructed to work this standby shift.  Defendants did not pay Plaintiffs and class members for the time they spent waiting to hear whether they needed to report for work at their store locations on days they ultimately were not called in.

71.     Third, as stated, Defendants had, and continue to have, a company-wide policy and/or practice of staffing their store locations strictly based on a labor budget set by the corporate office.  Defendants' use of a labor budget resulted in chronic understaffing, such that there were too few employees on duty to handle the heavy workload, including pressure to meet daily and weekly sales goals and ear-piercing quotas, and provide uninterrupted meal period coverage.  Plaintiffs and class members were denied uninterrupted 30-minute meal periods, and were required to work through and/or to return early from meal periods.  Furthermore, Defendants had a company-wide practice of failing to adhere to a schedule for meal periods, which further caused Plaintiffs and class members to not be relieved of their duties for compliant meal periods.

72.     As a result of this lack of meal period coverage, Plaintiffs and class members were not always afforded thirty (30) minute meal periods during shifts when they were entitled to receive a meal period and instead continued to work during unpaid meal periods, time for which they were not paid.  For example, Defendants expected Plaintiffs and class members to continue working through all or parts of their meal periods to assist customers, address questions from other employees, handle loss prevention incidents, and/or address issues with the cash registers so other sales associates were able to continue making sales and meet the sales goals set by Defendants.  Moreover, on information and belief, because Defendants frowned upon employees accruing meal period penalties, Defendants adjusted Plaintiff Zepeda Coutts's and class members' time records to reflect compliant meal periods, even when they did not receive a compliant meal period, in order to strictly limit meal penalties that Defendants would otherwise owe.  Thus, Plaintiff Zepeda Coutts and class members performed work during meal periods for which they were not paid.

73.     Defendants knew or should have known that, as a result of these company-wide practices and/or policies, Plaintiffs and class members were performing their assigned duties off-the-clock before and after their shifts and during meal periods, and were suffered or permitted to perform work for which they were not paid.  Because Plaintiffs and class members worked shifts of eight (8) hours a day or more, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.  Therefore, Plaintiffs and class members were not paid overtime wages for all of the overtime hours they actually worked.

74.     Defendants' failure to pay Plaintiffs and class members the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.  Pursuant to California Labor Code section 1194, Plaintiffs and class members are entitled to recover from

1    Defendants their unpaid overtime compensation, as well as interest, costs, and

2    attorneys' fees.

3    **SECOND CAUSE OF ACTION**

4    **Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and**

5    **1198—Unpaid Minimum Wages**

6    **(Against all Defendants)**

7    75.    Plaintiffs incorporate by reference and re-allege as if fully stated

8    herein each and every allegation set forth above.

9    76.    At all relevant times, California Labor Code sections 1182.12, 1194,

10   1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by

11   the IWC is the minimum wage to be paid to employees, and the payment of a

12   wage less than the minimum so fixed is unlawful.  Compensable work time is

13   defined in IWC Wage Order No. 7-2001 as "the time during which an employee

14   is subject to the control of an employer, and includes all the time the employee is

15   suffered or permitted to work, whether or not required to do so."  Cal. Code

16   Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

17   77.    First, as set forth above, due to Defendants' restrictions on overtime

18   accrual, Defendants systematically failed to pay Plaintiffs and class members for

19   actual hours worked before and after their scheduled shifts.  As stated, Plaintiffs

20   and class members were required to perform work-related tasks while off-the-

21   clock, such as setting up for ear piercings, cleaning the backroom, assisting

22   customers, completing trainings, donning store accessories prior to start of their

23   shifts, setting up for the store layout update, performing closing shift duties,

24   driving to the bank and making bank drops, responding to phone calls and text

25   messages from management, and traveling to storage or store locations to pick

26   up or drop off merchandise.

27   78.    Second, as stated above, Defendants had a company-wide "on-call"

28   policy, whereby they required Plaintiffs and class members to wait to be called

by Defendants when scheduled for "on-call" or standby shifts. However, Defendants did not pay Plaintiffs and class members at least minimum wages for the time they spent waiting to see if they were needed at the store.

79.    Third, as also stated, due to Defendants' uniform practices of utilizing labor budgets, understaffing, assignment of heavy workloads, pressure to meet sales goals, failure to adhere to a schedule for meal periods, and subsequent lack of meal period coverage, Plaintiffs and class members were impeded from taking all uninterrupted meal periods to which they were entitled and were required to work during their meal periods, time for which they were not paid. Moreover, as stated above, on information and belief, in order to limit meal penalties that Defendants would otherwise owe, Defendants adjusted employee time records to reflect compliant meal periods, but required Plaintiff Zepeda Coutts and class members to continue working, time for which they were not paid.

80.    Thus, Defendants did not pay minimum wages for all hours worked by Plaintiffs and class members. To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

81.    As a result, Defendants regularly failed to pay at least minimum wages to Plaintiffs and class members for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Pursuant to California Labor Code section 1194.2, Plaintiffs and class members are entitled to recover from Defendants liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

//

//

//

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**

**Violations of California Labor Code §§ 226.7, 512(a), 516, and 1198—Meal**

**Period Violations**

**(Against all Defendants)**

82.    Plaintiffs incorporate by reference and re-allege as if fully stated
herein each and every allegation set forth above.

83.    At all relevant times herein set forth, California Labor Code section
512(a) provides that an employer may not require, cause, or permit an employee
to work for a period of more than five (5) hours per day without providing the
employee with a meal period of not less than thirty (30) minutes, except that if
the total work period per day of the employee is not more than six (6) hours, the
meal period may be waived by mutual consent of both the employer and the
employee.  Under California law, first meal periods must start after no more than
five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042
(2012).

84.    At all relevant times herein set forth, California Labor Code sections
226.7, 512(a), 516, and 1198 provide that no employer shall require an employee
to work during any meal period mandated by an applicable order of the IWC.

85.    At all relevant times herein set forth, Labor Code sections 226.7 and
512(a) and the applicable IWC Wage Order also require employers to provide a
second meal period of not less than thirty (30) minutes if an employee works
over ten (10) hours per day or to pay an employee one (1) additional hour of pay
at the employee's regular rate, except that if the total hours worked is no more
than twelve (12) hours, the second meal period may be waived by mutual
consent of the employer and the employee only if the first meal period was not
waived.

86.    First, as stated above, Defendants had, and continue to have, a
company-wide policy and/or practice of understaffing their store locations due to

labor budgeting, which, combined with heavy workloads and a failure to adhere to a schedule for meal periods, has resulted in a lack of meal period coverage and prevented Plaintiffs and class members from taking all timely, uninterrupted meal periods to which they were entitled. Moreover, as stated, Defendants had a company-wide policy and/or practice of requiring that Plaintiffs and class members continue working through all or parts of their meal periods to assist customers, handle loss prevention incidents, and address issues with the cash registers so other associates were able to continue making sales and meet the sales goals set by Defendants.

87.    As a result, Plaintiffs and class members had to work through all or part of their meal periods, had their meal periods interrupted, and/or had to wait extended periods of time before taking meal periods. For example, Plaintiffs missed their meal periods or took them late due to understaffing, lack of coverage, and in order to meet the store's customer demand. As a further example, Plaintiff Cuevas's meal periods were interrupted in order to address potential loss prevention incidents, other employees requesting his assistance with cash register issues, and heavy customer foot traffic in the store, while Plaintiff Zepeda Coutts's meal periods were interrupted in order to address questions from other employees.

88.    Second, as stated, on information and belief, because Defendants frowned upon employees accruing meal period penalties, Defendants' management would adjust Plaintiff Zepeda Coutts's and other aggrieved employees' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by Defendants.

89.    Third, Defendants did not provide Plaintiff Zepeda Coutts and class members with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. For example, during the relevant time

period, Plaintiff Zepeda Coutts worked at least one shift in excess of 10 hours in one day, but was not provided a second 30-minute meal period.  Plaintiffs and class members did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

90.    Moreover, Defendants had a company-wide policy of requiring all newly hired employees to sign blanket meal period waivers at or near their time of hire.  Defendants took the position that non-exempt, hourly paid employees had waived their rights to first and/or second meal periods for the entirety of their employment and, on that basis, did not provide them with all meal periods to which they were entitled.  Moreover, Defendants' meal period waiver form requires employees provide advance and/or written notice should they wish to revoke the waiver.  Defendants' presumption that meal periods would not be provided for shifts in excess of five (5) hours but less than six (6) hours and/or for shifts in excess of ten (10) hours but less than twelve (12) hours, due to blanket meal period waivers signed at or near the time of hire, and imposition on employees to revoke the waivers in writing and/or one day in advance, discouraged and impeded Plaintiffs and class members from taking all meal periods to which they were entitled.

91.    Furthermore, an employer's obligation to provide a meal period is only "triggered" when the employer "employs an employee for a work period of more than five hours per day."  *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay.

*Id*. (citing Cal. Labor Code § 226.7; Wage Order No. 4, subd. 11(A), (B)).  That

Defendants required Plaintiffs and class members to sign meal period waivers simultaneously at or near their time of hire (as opposed to on a specific work day) renders them invalid and unenforceable, because Defendants' obligation to provide Plaintiffs and class members with meal periods did not arise until they had employed them for a full five (5) hours.

92.    At all times mentioned herein, Defendants knew or should have known that as a result of their policies, Plaintiffs and class members were not actually relieved of all duties to take timely, uninterrupted meal periods. Defendants further knew or should have known that they did not pay Plaintiffs and class members all meal period premiums when meal periods were late, interrupted, shortened, or missed.

93.    Furthermore, Defendants engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided.  Because of this practice and/or policy, Plaintiffs and class members have not received premium pay for missed, late, and/or interrupted meal periods.  As a result, Defendants failed to provide Plaintiffs and class members compliant meal periods in violation of California Labor Code sections 226.7, 512(a), and 516.

94.    Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), 516, and 1198.  Plaintiffs and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

## FOURTH CAUSE OF ACTION

### Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations

### (Against all Defendants)

95.    Plaintiffs incorporate by reference and re-allege as if fully stated

1    herein each and every allegation set forth above.

2        96.    At all relevant times herein set forth, the applicable IWC Wage

3    Order and California Labor Code sections 226.7, 516, and 1198 were applicable

4    to Plaintiffs' and class members' employment by Defendants.

5        97.    At all relevant times, the applicable IWC Wage Order provides that

6    "[e]very employer shall authorize and permit all employees to take rest periods,

7    which insofar as practicable shall be in the middle of each work period" and that

8    the "rest period time shall be based on the total hours worked daily at the rate of

9    ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless

10   the total daily work time is less than three and one-half (3 ½) hours.

11       98.    At all relevant times, California Labor Code section 226.7 provides

12   that no employer shall require an employee to work during any rest period

13   mandated by an applicable order of the California IWC.  To comply with its

14   obligation to authorize and permit rest periods under California Labor Code

15   section 226.7 and the applicable IWC Wage Order, an employer must "relinquish

16   any control over how employees spend their break time, and relieve their

17   employees of all duties—including the obligation that an employee remain on

18   call.  A rest period, in short, must be a period of rest." *Augustus v. ABM Security*

19   *Services, Inc.*, 2 Cal. 5th 257, 273 (2016).  Pursuant to the applicable IWC Wage

20   Order and California Labor Code section 226.7(c), Plaintiffs and class members

21   are entitled to recover from Defendants one (1) additional hour of pay at their

22   regular rates of pay for each work day that a required rest period was not

23   authorized and permitted.

24       99.    Defendants regularly failed to authorize and permit Plaintiffs and

25   class members to take a ten (10) minute rest period per each four (4) hour period

26   worked or major fraction thereof.  As with meal periods, Defendants' company-

27   wide practices of understaffing and assignment of heavy workloads prevented

28   Plaintiffs and class members from being relieved of all duty to take their rest

1    periods.  Additionally, Defendants failed to schedule rest periods, which,
2    coupled with Defendants' failure to provide adequate rest period coverage,
3    further led to Plaintiffs and class members not being authorized and permitted to
4    take compliant rest periods.

5        100.   Moreover, upon information and belief, Defendants maintained a
6    company-wide on-premises rest period policy, which mandated that Plaintiffs
7    and/or class members remain on Defendants' premises during their rest periods.
8    Because Plaintiffs and/or class members were restricted from leaving the
9    premises during rest periods, they were denied the ability to use their rest periods
10   freely for their own purposes, such as running personal errands.  Thus,
11   Defendants effectively maintained control over Plaintiffs and/or class members
12   during rest periods.

13       101.   As a result of Defendants' practices and policies, Plaintiffs and class
14   members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in
15   excess of 10 hours without receiving all uninterrupted 10-minute rest periods to
16   which they were entitled.  For example, Plaintiffs would miss their rest periods
17   to meet customer demand and due to a lack of rest period coverage.  And, even
18   when Plaintiffs were finally able to take their rest periods, they were cut short
19   due to the heavy workload and an increase in customer service demand.

20       102.   Defendants have also engaged in a systematic, company-wide
21   practice and/or policy of not paying rest period premiums owed when rest
22   periods are not authorized and permitted.  Because of this practice and/or policy,
23   Plaintiffs and class members have not received premium pay for all missed rest
24   periods.  As a result, Defendants denied Plaintiffs and class members rest periods
25   and failed to pay them rest period premiums due, in violation of Labor Code
26   sections 226.7, 516, and the applicable IWC Wage Order.

27       103.   Defendants' conduct violates the applicable IWC Wage Order and
28   California Labor Code sections 226.7, 516, and 1198.  Plaintiffs and class

1  members are therefore entitled to recover from Defendants one (1) additional
2  hour of pay at the employee's regular rate of compensation for each work day
3  that a compliant rest period was not authorized and permitted.

**FIFTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

104.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

105.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

106.    At all relevant times, Defendants have knowingly and intentionally provided Plaintiffs and Subclass members with uniform, incomplete, and inaccurate wage statements.  For example, Defendants issued uniform wage statements to Plaintiffs and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages and/or paid sick leave, and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

107.    Because Defendants did not record the time Plaintiffs and Subclass members spent working off the clock and/or deducted time from their records for meal periods that were missed and/or interrupted (and therefore time for which

they should have been paid), Defendants did not list the correct amount of gross wages and net wages earned by Plaintiffs and Subclass members in compliance with section 226(a)(1) and 226(a)(5). For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiffs and Subclass members in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and corresponding accurate number of work hours worked at each hourly rate in violation of section 226(a)(9).

108. In addition, because Defendants did not calculate Plaintiff Zepeda Coutts's and Subclass members' regular rate of pay correctly for purposes of paying paid sick leave, Defendants did not list the correct amount of gross wages in compliance with section 226(a)(1). For the same reason, Defendants failed to list the correct amount of net wages in violation of section 226(a)(5). Defendants also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct rates of pay for paid sick leave, in violation of section 226(a)(9).

109. The wage statement deficiencies also include, without limitation, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

110. California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which

employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ."  At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiffs and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

111.  California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, Defendants engaged in company-wide practices and/or policies of failing to record actual hours worked (including falsifying time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken), and thereby failed to keep accurate records of work period and meal period start and stop times for Plaintiffs and Subclass members, in violation of section 1198.  Furthermore, in light of Defendants' failure to provide Plaintiff Zepeda Coutts and Subclass members with second 30-minute meal periods to which they were entitled, Defendants kept no records of meal start and end times for second meal periods.

112.  Plaintiffs and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not

exceeding four thousand dollars ($4,000) per employee.

## SIXTH CAUSE OF ACTION

### Violation of California Labor Code § 227.3—Failure to Pay All Vested Vacation Time and Paid Time Off Upon Termination

### (Against all Defendants)

113.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

114.   At all relevant times herein set forth, California Labor Code section 227.3 provides that whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken his or her vested vacation time, all vested vacation shall be paid to him or her as wages at his or her final rate in accordance with such contract of employment or employer policy respecting eligibility or time served.

115.   During the relevant time period, Defendants willfully failed to pay Plaintiffs and class members all vested vacation wages that were owed to them at the end of their employment.  Specifically, Defendants failed to correctly calculate and pay all earned vested vacation hours due to the hours Plaintiffs and class members worked off-the-clock, pursuant to company-wide policies and/or practices.  Defendants' failure to pay Plaintiffs and class members who are no longer employed by Defendants all vested vacation wages at the end of their employment caused a forfeiture of vested vacation wages in violation of California Labor Code section 227.3.

116.   Defendants' failure to pay Plaintiffs and class members who are no longer employed by Defendants all vested vacation wages at the end of their employment caused a forfeiture of vested vacation wages in violation of California Labor Code section 227.3.  Accordingly, Plaintiffs and class members are entitled to recover from Defendants their unpaid vested vacation wages due to them, plus interest.

**SEVENTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon Termination**

**(Against all Defendants)**

117.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

118.   At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

119.   On information and belief, Defendants had a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202.  For example, Plaintiff Cuevas quit his employment on or about February 14, 2022.  However, Defendants did not provide Plaintiff Cuevas with his final paycheck until approximately one week later.  Thus, Defendants failed to pay Plaintiff Cuevas his final wages within (72) hours after he quit, in violation of Labor Code section 202.

120.   Additionally, Defendants willfully failed to pay Plaintiffs and those class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, meal and rest period premiums, vested vacation pay, sick leave pay, and/or reporting time pay, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

121.    Defendants' failure to pay Plaintiffs and class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiffs and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

### EIGHTH CAUSE OF ACTION

### Violation of California Labor Code § 204—Failure to Timely Pay Wages During Employment

### (Against all Defendants)

122.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

123.   This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, meal and rest period premiums, sick leave pay, and/or reporting time pay that were not timely paid to Plaintiffs and class members during their employment.

124.   At all times relevant herein set forth, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

125.   At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

126.   At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

127.   During the relevant time period, Defendants willfully failed to pay Plaintiffs and class members all wages due including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, sick leave pay, and/or reporting time pay, within the time periods specified by California Labor Code section 204.

128.   Defendants' failure to timely pay Plaintiffs and class members all wages due violates Labor Code section 204.  Plaintiffs and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210.

## NINTH CAUSE OF ACTION

**Violation of Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 5(A)—Failure to Provide Reporting Time Pay**

**(Against all Defendants)**

129.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

130.   California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order.  California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

131. The applicable IWC wage order, California Code of Regulations, Title 8, section 11070(5)(A), provides that "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." The "primary purpose of the reporting time regulation" is "to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer." *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556 (2012).

132. During the relevant time period, Defendants violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(5)(A), because Defendants failed to pay Plaintiffs and class members reporting time pay when they reported to work for their usual or scheduled shift but were put to work for less than half of their usual or scheduled day's work.

133. As stated, Defendants had a company-wide "on-call" policy, whereby they scheduled Plaintiffs and class members to work "on-call," or on standby. When scheduled for a "on-call" or standby shift, Plaintiffs and class members regularly presented themselves as ready for work by waiting for the store to call them before their scheduled standby shift and would await instructions on whether to report to the store. When this occurred, Defendants did not pay Plaintiffs and class members for at least half of their scheduled day's work or the minimum reporting time pay when they were subject to Defendants' "on-call" policy and were ultimately not called.

134. Accordingly, Plaintiffs and class members were not properly compensated with reporting time pay in violation of California Labor Code

section 1198 and California Code of Regulations, Title 8, section 11070(5)(A). Plaintiffs and class members are therefore entitled to recover from Defendants unpaid wages and interest.

**TENTH CAUSE OF ACTION**

**Violation of California Labor Code § 2802—Unpaid Business-Related Expenses**

**(Against all Defendants)**

135.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

136.   At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order No. 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

137.   First, during the relevant time period, Defendants had a company-wide policy of requiring Plaintiffs and class members to utilize their own personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties, but Defendants failed to reimburse them for the costs of their work-related mobile device expenses.  Plaintiffs and class members were required to use their personal mobile devices for work-related

tasks, including responding to calls or text messages from Defendants' management and other employees regarding work assignments, scheduling, and inventory.  Additionally, Defendants required Plaintiff Cuevas to use his personal mobile device to take photos of completed paperwork and send the photos to the District Manager.  Further, Plaintiffs were required to download the Dayforce mobile application onto their personal cellular phones in order to access their timesheets and paystubs, request days off, and/or complete trainings. Plaintiff Zepeda Coutts and class members were also required to download the WhatsApp mobile application in order to communicate with other employees and/or the Claire's mobile application for work-related purposes.  Although Defendants required Plaintiffs and class members to utilize their personal mobile devices and/or mobile data to carry out their work-related duties, Defendants failed to reimburse them for these costs.

138.   Second, during the relevant time period, Defendants, on a company-wide basis, required that Plaintiff Cuevas and class members use their own personal vehicles to run company errands.  For example, Plaintiff Cuevas was required to use his personal vehicle and drive to the bank to complete a deposit or obtain change for the cash registers.  Additionally, during the relevant time period, Plaintiff Cuevas was required to use his personal vehicle and run company errands, such as driving to a nearby storage unit or another store location to drop off or pick up necessary merchandise.  Although Defendants required Plaintiff Cuevas and class members to utilize their personal vehicles to carry out their work-related responsibilities, Defendants failed to reimburse them for their mileage or travel expenses.

139.   Third, during the relevant time period, Defendants required Plaintiff Cuevas and class members to purchase supplies and equipment necessary for the performance of their duties, but failed to reimburse them for their out-of-pocket costs.  For example, Plaintiff Cuevas purchased two clipboards for the ear-

piercing stations in order to keep forms organized because Defendants failed to provide him with the necessary supplies required for the store to operate properly and/or meet management's expectations.  Although Defendants required Plaintiff Cuevas and class members to purchase supplies and equipment to carry out their work-related responsibilities, Defendants failed to reimburse them for their out-of-pocket costs to purchase necessary supplies and equipment.

140.   Defendants could have provided Plaintiffs and class members with the actual tools for use on the job, such as company mobile devices, company vehicles, and supplies and equipment; or, Defendants could have reimbursed employees for the costs of their mobile device usage, mileage, travel expenses, and supply and equipment expenses.  Instead, Defendants passed these operating costs off onto Plaintiffs and class members.  At all relevant times, Plaintiffs did not earn at least two (2) times the minimum wage.

141.   Defendants' company-wide policy and/or practice of passing on their operating costs to Plaintiffs and class members violates California Labor Code section 2802.  Defendants have intentionally and willfully failed to reimburse Plaintiffs and class members for necessary business-related expenses and costs.

142.   Plaintiffs and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest.

**ELEVENTH CAUSE OF ACTION**

**For Civil Penalties Pursuant to California Labor Code §§ 2698,** *et seq.*

**(Against all Defendants)**

143.   Plaintiffs incorporate by reference and re-alleges as if fully stated herein each and every allegation set forth above.

144.   California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiffs to recover civil penalties for the violation(s) of the Labor Code sections

enumerated in Labor Code section 2699.5.  Section 2699.5 enumerates Labor Code sections 201, 202, 204, 226(a), 226.7, 227.3, 450, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, and 2802.  Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiffs, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 246, 516, and 1182.12.

145.   Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

       (a)    Violation of Labor Code sections 510 and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiffs and other aggrieved employees with all required overtime pay, as alleged herein;

       (b)    Violation of Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiffs and other aggrieved employees with at least minimum wages for all hours worked, as alleged herein;

       (c)    Violation of Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to provide Plaintiffs and other aggrieved employees with meal periods, as alleged herein;

       (d)    Violation of Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to authorize and permit Plaintiffs and other aggrieved employees to take rest periods, as alleged herein;

       (e)    Violation of Labor Code sections 226(a) and 1198, and the applicable IWC Wage Order for failure to provide accurate and complete wage statements to Plaintiffs and other

1    aggrieved employees, as alleged herein;

2    (f)    Violation of Labor Code sections 1174(d) and 1198, and the

3    applicable IWC Wage Order for failure to maintain payroll

4    records, as alleged herein;

5    (g)    Violation of Labor Code sections 201 and 202 for failure to

6    pay all earned wages upon termination, as alleged herein;

7    (h)    Violation of Labor Code section 204 for failure to pay all

8    earned wages during employment, as alleged herein;

9    (i)    Violation of Labor Code section 227.3 for failure to pay

10    Plaintiffs and other aggrieved employees all vested vacation

11    time upon termination, as alleged herein;

12    (j)    Violation of Labor Code section 246 for failure to properly

13    calculate the sick leave paid to Plaintiff Zepeda Coutts and

14    other aggrieved employees, as set forth below;

15    (k)    Violation of Labor Code section 450 for compelling other

16    aggrieved employees to patronize Defendants' or any other

17    person's business in the purchase of anything of value, as set

18    forth below;

19    (l)    Violation of Labor Code section 1198 and the applicable IWC

20    Wage Order for failure to pay reporting time pay when

21    Plaintiffs and other aggrieved employees were put to work for

22    less than half of their usual or scheduled shifts, as alleged

23    herein;

24    (m)    Violation of Labor Code section 1198 and the applicable IWC

25    Wage Order for failure to pay split-shift premiums when

26    Plaintiff Cuevas and other aggrieved employees returned to

27    work for an additional shift in the same day, after having been

28    clocked out for more than an hour, as set forth below;

(n)    Violation of Labor Code section 1198 and the applicable IWC
Wage Order for failure to provide suitable resting facilities to
Plaintiffs and other aggrieved employees, as set forth below;
and

(o)    Violation of Labor Code section 2802 for failure to reimburse
Plaintiffs and other aggrieved employees for all business
expenses necessarily incurred, as alleged herein.

146.    At all relevant times herein, California Labor Code sections 245.5,
246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in
California for 30 or more days from the commencement of employment with
paid sick days, to be accrued at least one hour for every 30 hours worked.
Pursuant to California Labor Code section 246(b)(4), employers must provide no
less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or
paid time off) in each year of the employee's employment.  Further, Labor Code
section 246(l) provides that an employer shall calculate paid sick leave by using
one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be
calculated in the same manner as the regular rate of pay for the workweek in
which the employee uses paid sick time, whether or not the employee actually
works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt
employees shall be calculated by dividing the employee's total wages, not
including overtime premium pay, by the employee's total hours worked in the
full pay periods of the prior 90 days of employment."

147.    During the relevant time period, Defendants did not pay Plaintiff
Zepeda Coutts and other aggrieved employees the correct sick leave rates of pay.
In addition to an hourly wage, Defendants paid Plaintiff Zepeda Coutts and other
aggrieved employees hazard pay, incentive pay, nondiscretionary bonuses,
and/or other forms of remuneration.  However, in violation of the California
Labor Code, Defendants failed to incorporate all remunerations, including hazard

pay, incentive pay, and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the sick leave pay rate. Therefore, during times when Plaintiff Zepeda Coutts and other aggrieved employees took sick leave and received these other forms of pay, Defendants failed to pay all sick leave benefits by paying a lower sick leave pay rate than required.

148. Specifically, Defendants paid Plaintiff Zepeda Coutts and other aggrieved employees sick leave based on their hourly rate of pay instead of their regular rate of pay. For example, Plaintiff Zepeda Coutts earned incentive pay and/or a nondiscretionary bonus for the period of October 31, 2021, to January 29, 2022, which was not incorporated into the calculation of her regular rate of pay. During this period, she also took 28.73 hours of sick pay, which was paid at an hourly rate of $15.50, instead of her regular rate of pay.

149. Defendants' failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to Plaintiff Zepeda Coutts and other aggrieved employees on a company-wide basis in violation of Labor Code section 246(l). Plaintiff Zepeda Coutts and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 248.5 and/or 2699(a), (f), and (g).

150. At all relevant times herein, California Labor Code section 450 provides that an employer may not "compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of anything of value." An employer violates section 450 by forcing an employee to patronize the employer's business in the purchase of a company-provided good.

151. Defendants had a company-wide policy of requiring employees to purchase uniform items, such as jewelry, purses, and other accessories, directly from Defendants' stores. Other aggrieved employees were required to purchase multiple accessory items from Defendants to wear as a "uniform" during their

shifts.

152.   Defendants' conduct of compelling and/or coercing other aggrieved employees to purchase goods from them violates California Labor Code section 450.  Other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

153.   At all relevant times herein, California Labor Code section 1198 provides that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order.  California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

154.   California Code of Regulations, Title 8, section 11070(4)(C) provides that, "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment."  California Code of Regulations, Title 8, defines a split shift as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

155.   Defendants willfully violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(4)(C), because Defendants failed to pay Plaintiff Cuevas and other aggrieved employees a split-shift premium when they returned to work for an additional shift in the same day, after having been clocked out for several hours.  For example, Plaintiff Cuevas was required to open the store and work the opening two (2) hours and then was told to clock out for several hours before returning to work in the late afternoon and/or evening to work the closing shift.  When this occurred, Defendants did not always pay Plaintiff Cuevas and other aggrieved employees an additional

1    hour at minimum wage.

2        156.    Defendants' failure to provide Plaintiff Cuevas and other aggrieved

3    employees with split-shift pay when they returned to work for an additional shift

4    in the same day, after having been clocked out for more than an hour, violates

5    California Labor Code section 1198 and California Code of Regulations Title 8,

6    section 11070(4)(C).  Plaintiff Cuevas and other aggrieved employees are

7    therefore entitled to recover civil penalties pursuant to Labor Code sections

8    2699(a), (f), and (g).

9        157.    California Code of Regulations, Title 8, section 11070(13)(B)

10   provides that "[s]uitable resting facilities shall be provided in an area separate

11   from the toilet rooms and shall be available to employees during work hours."

12       158.    Defendants' California stores are generally similar in their layout

13   and design and there was, and continues to be, space that allows for a resting

14   facility that employees may use to cease work and recover during meal or rest

15   periods.  Defendants could have provided Plaintiffs and other aggrieved

16   employees with a resting facility within their stores, with reasonable or no

17   modification, but instead denied, and continue to deny, employees suitable areas

18   to rest (e.g., a breakroom).  As a result, Plaintiffs and other aggrieved employees

19   were forced to adjust to areas not conducive to resting, such as areas not

20   designated or reserved for their rest, such as in the management office or in their

21   personal vehicles.

22       159.    Defendants did not provide Plaintiffs and other aggrieved employees

23   with suitable resting facilities during their work hours, particularly during meal

24   or rest periods.  In other words, during the times when Plaintiffs and other

25   aggrieved employees were legally allowed to forgo assigned tasks, as in during a

26   meal or rest period, Defendants denied them any area within their stores to cease

27   work and recover.  Moreover, Defendants did not inform Plaintiffs and other

28   aggrieved employees of their rights to suitable resting facilities under California

1    law.

2        160.   As a result of Defendants' company-wide failure to provide suitable

3    resting facilities in their stores, Plaintiffs and other aggrieved employees were

4    forced to adjust to areas not conducive to resting or search for facilities outside

5    their stores to cease work and recover.  Defendants' failure to provide suitable

6    resting facilities to Plaintiffs and other aggrieved employees violates California

7    Labor Code section 1198 and IWC Wage Order No. 7-2001, subdivision 13(B).

8    Plaintiffs and other aggrieved employees are therefore entitled to recover civil

9    penalties pursuant to Labor Code sections 2699(a), (f), and (g).

10                        **TWELFTH CAUSE OF ACTION**

11   **Violation of California Business & Professions Code §§ 17200, *et seq*. –**

12                       **Unlawful Business Practices**

13                       **(Against all Defendants)**

14       161.   Plaintiffs incorporate by reference and re-allege as if fully stated

15   herein each and every allegation set forth above.

16       162.   Defendants are "persons" as defined by California Business &

17   Professions Code section 17201, as they are corporations, firms, partnerships,

18   joint stock companies, and/or associations.

19       163.   Defendants' conduct, as alleged herein, has been, and continues to

20   be, unfair, unlawful and harmful to Plaintiffs, class members, and to the general

21   public.  Plaintiffs have suffered injury in fact and has lost money as a result of

22   Defendants' unlawful business practices.  Plaintiffs seek to enforce important

23   rights affecting the public interest within the meaning of Code of Civil Procedure

24   section 1021.5.

25       164.   Defendants' activities, as alleged herein, are violations of California

26   law, and constitute unlawful business acts and practices in violation of California

27   Business & Professions Code sections 17200, *et seq*.

28       165.   A violation of California Business & Professions Code sections

17200, *et seq.* may be predicated on the violation of any state or federal law.  In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

> (a)    Requiring non-exempt, hourly paid employees, including Plaintiffs and class members, to work overtime without paying them proper compensation in violation of California Labor Code sections 510 and 1198, and the applicable IWC Wage Order, as alleged herein;
>
> (b)    Failing to pay at least minimum wage to Plaintiffs and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order, as alleged herein;
>
> (c)    Failing to provide uninterrupted meal periods to Plaintiffs and class members in violation of California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order, as alleged herein;
>
> (d)    Failing to authorize and permit Plaintiffs and class members to take uninterrupted rest periods in violation of California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order, as alleged herein;
>
> (e)    Failing to provide Plaintiffs and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), and 1198, and the applicable IWC Wage Order, as alleged herein;
>
> (f)    Failing to pay all vested vacation wages and paid time off upon termination to Plaintiffs and class members in violation of California Labor Code section 227.3, as alleged herein;

(g)     Failing to timely pay all earned wages to Plaintiffs and class
        members in violation of California Labor Code section 204,
        as alleged herein;

(h)     Failing to properly calculate the sick leave paid to Plaintiff
        Zepeda Coutts and class members in violation of California
        Labor Code section 246, as set forth below;

(i)     Failing to pay reporting time pay in violation of California
        Labor Code section 1198 and the applicable IWC Wage
        Order, as alleged herein;

(j)     Failing to pay Plaintiff Cuevas and class members a split-shift
        premium wage of an additional hour of pay at the minimum
        wage, when they returned to work for an additional shift in
        the same day, after having been clocked out for more than an
        hour, in violation of California Labor Code section 1198 and
        the application IWC Order, as set forth below; and

(k)     Failing to reimburse Plaintiffs and class members for all
        business expenses necessarily incurred in violation of
        California Labor Code section 2802, as alleged herein.

166.   At all relevant times herein, California Labor Code sections 245.5,
246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in
California for 30 or more days from the commencement of employment with
paid sick days, to be accrued at least one hour for every 30 hours worked.
Pursuant to California Labor Code section 246(b)(4), employers must provide no
less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or
paid time off) in each year of the employee's employment.  Further, Labor Code
section 246(l) provides that an employer shall calculate paid sick leave by using
one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be
calculated in the same manner as the regular rate of pay for the workweek in

which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

167.   During the relevant time period, Defendants did not pay Plaintiff Zepeda Coutts and class members the correct sick leave rates of pay.  In addition to an hourly wage, Defendants paid Plaintiff Zepeda Coutts and class members hazard pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration.  However, in violation of the California Labor Code, Defendants failed to incorporate all remunerations, including incentive pay and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the sick leave pay rate.  Therefore, during times when Plaintiff Zepeda Coutts and class members took sick leave and received these other forms of pay, Defendants failed to pay all sick leave benefits by paying a lower sick leave pay rate than required.

168.   Specifically, Defendants paid Plaintiff Zepeda Coutts and class members sick leave based on their hourly rate of pay instead of their regular rate of pay. For example, Plaintiff Zepeda Coutts earned incentive pay and/or a nondiscretionary bonus for the period of October 31, 2021, to January 29, 2022, which was not incorporated into the calculation of her regular rate of pay. During this period, she also took 28.73 hours of sick pay, which was paid at an hourly rate of $15.50, instead of her regular rate of pay.

169.   Defendants' failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to Plaintiff Zepeda Coutts and class members on a company-wide basis, in violation of Labor Code section 246(l).

170.   At all times relevant herein, Labor Code section 1198 provides that

1    no employer may employ an employee under conditions of labor that are

2    prohibited by the applicable IWC wage order.  California Code of Regulations,

3    Title 8, section 11070(4)(C) provides that, "When an employee works a split

4    shift, one (1) hour's pay at the minimum wage shall be paid in addition to the

5    minimum wage for that workday, except when the employee resides at the place

6    of employment."  Plaintiff Cuevas and class members did not reside at

7    Defendants' locations.  California Code of Regulations, Title 8, defines a split

8    shift as "a work schedule, which is interrupted by non-paid non-working periods

9    established by the employer, other than bona fide rest or meal periods."

10    171.    Defendants violated California Labor Code section 1198 and

11    California Code of Regulations, Title 8, section 11070(4)(C), because

12    Defendants have failed to pay Plaintiff Cuevas and class members a split-shift

13    premium when they returned to work for an additional shift in the same day,

14    after having been clocked out for more than an hour.  For instance, Plaintiff

15    Cuevas was required to open the store and work the opening two (2) hours and

16    then was told to clock out for several hours before returning to work in the late

17    afternoon and/or evening to work the closing shift.  When this occurred,

18    Defendants did not always pay Plaintiff Cuevas and class members an additional

19    hour at minimum wage.

20    172.    Accordingly, Defendants required Plaintiff Cuevas and class

21    members to work split shifts but failed to pay them the split-shift premium wage

22    in violation of California Labor Code section 1198.  Defendants' failure to

23    compensate Plaintiff Cuevas and class members with split-shift pay when they

24    returned to work for an additional shift in the same day, after having been

25    clocked out for more than an hour, violates California Labor Code section 1198

26    and California Code of Regulations Title 8, section 11070(4)(C).

27    173.    As a result of the violations of California law herein described,

28    Defendants unlawfully gained an unfair advantage over other businesses.

1    Plaintiffs and class members have suffered pecuniary loss by Defendants'

2    unlawful business acts and practices alleged herein.

3         174.   Pursuant to California Business & Professions Code sections 17200,

4    *et seq.*, Plaintiffs and class members are entitled to restitution of the wages

5    withheld and retained by Defendants during a period that commences four years

6    prior to the filing of this complaint; a permanent injunction requiring Defendants

7    to pay all outstanding wages due to Plaintiffs and class members; and an award

8    of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5

9    and other applicable laws; and an award of costs.

10                        **THIRTEENTH CAUSE OF ACTION**

11   **Violation of California Business & Professions Code §§ 17200, *et seq*. –**

12                           **Unfair Business Practices**

13                           **(Against all Defendants)**

14        175.   Plaintiffs incorporate by reference and re-allege as if fully stated

15   herein each and every allegation set forth above.

16        176.   Defendants are "persons" as defined by California Business &

17   Professions Code section 17201, as they are corporations, firms, partnerships,

18   joint stock companies, and/or associations.

19        177.   Defendants' conduct, as alleged herein, has been, and continues to

20   be, unfair, and harmful to Plaintiffs, class members, and to the general public.

21   Plaintiffs have suffered injury in fact and have lost money as a result of

22   Defendants' unfair business practices.  Plaintiffs seek to enforce important rights

23   affecting the public interest within the meaning of Code of Civil Procedure

24   section 1021.5.

25        178.   Defendants' activities, namely Defendants' company-wide practice

26   and/or policy of not paying Plaintiffs and class members all meal and rest period

27   premiums due to them under California Labor Code section 226.7, deprived

28   Plaintiffs and class members of the compensation guarantee and enhanced

enforcement implemented by section 226.7.  The statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to compensate employees, and secondarily to shape employer conduct."  *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1149 (2015).  The statutory benefits of section 226.7 were guaranteed to Plaintiffs and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq.*  (*Id.*)

179.   A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on any unfair business practice.  In the instant case, Defendants' policies and practices have violated the spirit of California's meal and rest period laws and constitute acts against the public policy behind these laws.

180.   Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiffs and class members are entitled to restitution for the class-wide loss of the statutory benefits implemented by California Labor Code section 226.7 withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all statutory benefits implemented by California Labor Code section 226.7 due to Plaintiffs and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of all others similarly situated, pray for relief and judgment against Defendants, jointly and severally, as follows:

1.   For damages, unpaid wages, penalties, injunctive relief, and

1   attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of

2   interest and costs.  Plaintiffs reserve the right to amend their prayer for relief to

3   seek a different amount.

4                              **Class Certification**

5       2.      That this case be certified as a class action;

6       3.      That Plaintiffs be appointed as the representatives of the Class and

7   Subclass;

8       4.      That counsel for Plaintiffs be appointed as class counsel.

9                          **As to the First Cause of Action**

10      5.      That the Court declare, adjudge, and decree that Defendants violated

11  California Labor Code sections 510 and 1198 and the applicable IWC Wage

12  Order by willfully failing to pay all overtime wages due to Plaintiffs and class

13  members;

14      6.      For general unpaid wages at overtime wage rates and such general

15  and special damages as may be appropriate;

16      7.      For pre-judgment interest on any unpaid overtime compensation

17  commencing from the date such amounts were due, or as otherwise provided by

18  law;

19      8.      For reasonable attorneys' fees and for costs of suit incurred herein

20  pursuant to California Labor Code section 1194(a); and

21      9.      For such other and further relief as the Court may deem equitable

22  and appropriate.

23                      **As to the Second Cause of Action**

24      10.     That the Court declare, adjudge and decree that Defendants violated

25  California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 and the

26  applicable IWC Wage Order by willfully failing to pay minimum wages to

27  Plaintiffs and class members;

28      11.     For general unpaid wages and such general and special damages as

1  may be appropriate;

2      12.    For pre-judgment interest on any unpaid compensation from the date
3  such amounts were due, or as otherwise provided by law;

4      13.    For reasonable attorneys' fees and for costs of suit incurred herein
5  pursuant to California Labor Code section 1194(a);

6      14.    For liquidated damages pursuant to California Labor Code section
7  1194.2; and

8      15.    For such other and further relief as the Court may deem equitable
9  and appropriate.

10                      **As to the Third Cause of Action**

11      16.    That the Court declare, adjudge, and decree that Defendants violated
12  California Labor Code sections 226.7, 512(a), 516, and 1198 and the applicable
13  IWC Wage Order by willfully failing to provide all meal periods to Plaintiffs and
14  class members;

15      17.    That the Court make an award to the Plaintiffs and class members of
16  one (1) hour of pay at each employee's regular rate of pay for each workday that
17  a meal period was not provided;

18      18.    For all actual, consequential, and incidental losses and damages,
19  according to proof;

20      19.    For premiums pursuant to California Labor Code section 226.7(c);

21      20.    For pre-judgment interest on any unpaid meal period premiums
22  from the date such amounts were due, or as otherwise provided by law;

23      21.    For attorneys' fees pursuant to California Code of Civil Procedure
24  section 1021.5, or as otherwise provided by law; and

25      22.    For such other and further relief as the Court may deem equitable
26  and appropriate.

27                      **As to the Fourth Cause of Action**

28      23.    That the Court declare, adjudge and decree that Defendants violated

California Labor Code sections 226.7, 516, and 1198 and the applicable IWC Wage Order by willfully failing to authorize and permit Plaintiffs and class members to take all rest periods;

24.    That the Court make an award to the Plaintiffs and class members of one (l) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted;

25.    For all actual, consequential, and incidental losses and damages, according to proof;

26.    For premiums pursuant to California Labor Code section 226.7(c);

27.    For pre-judgment interest on any unpaid rest period premiums from the date such amounts were due, or as otherwise provided by law;

28.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

29.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Fifth Cause of Action

30.    That the Court declare, adjudge and decree that Defendants violated the recordkeeping provisions of California Labor Code section 226(a) and the applicable IWC Wage Order as to Plaintiffs and Subclass members, and willfully failed to provide accurate itemized wage statements thereto;

31.    For all actual, consequential, and incidental losses and damages, according to proof;

32.    For injunctive relief pursuant to California Labor Code section 226(h);

33.    For statutory penalties pursuant to California Labor Code section 226(e);

34.    For attorneys' fees and costs pursuant to California Labor Code section 226(e)(1); and

35.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Sixth Cause of Action**

36.    That the Court declare, adjudge and decree that Defendants violated California Labor Code section 227.3 by willfully failing to pay vested vacation wages owed at the time of termination of the employment of Plaintiffs and other terminated class members;

37.    For all actual, consequential and incidental losses and damages, according to proofs;

38.    For prejudgment interest on any unpaid wages from the date of such amounts were due, or as otherwise provided by law

39.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

40.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Seventh Cause of Action**

41.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages, meal and rest period premiums, sick leave pay, all vested vacation wages, and/or reporting time pay owed at the time of termination of the employment of Plaintiffs and other terminated class members;

42.    For all actual, consequential and incidental losses and damages, according to proof;

43.    For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left Defendants' employ;

44.    For pre-judgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

45.    For attorneys' fees pursuant to California Code of Civil Procedure

1    section 1021.5, or as otherwise provided by law; and

2        46.    For such other and further relief as the Court may deem equitable

3    and appropriate.

4                    **As to the Eighth Cause of Action**

5        47.    That the Court declare, adjudge and decree that Defendants violated

6    California Labor Code section 204 by willfully failing to timely pay Plaintiffs

7    and class members overtime wages, minimum wages, meal and rest period

8    premiums, sick leave pay, and/or reporting time pay during their employment;

9        48.    For all actual, consequential and incidental losses and damages,

10   according to proof;

11       49.    For statutory penalties according to proof pursuant to California

12   Labor Code section 210;

13       50.    For pre-judgment interest on any unpaid wages from the date such

14   amounts were due, or as otherwise provided by law;

15       51.    For attorneys' fees pursuant to California Code of Civil Procedure

16   section 1021.5, or as otherwise provided by law; and

17       52.    For such other and further relief as the Court may deem equitable

18   and appropriate.

19                    **As to the Ninth Cause of Action**

20       53.    That the Court declare, adjudge and decree that Defendants violated

21   California Labor Code section 1198 and California Code of Regulations, Title 8,

22   section 11050(5)(A) by failing to provide Plaintiffs and class members with

23   reporting time pay;

24       54.    For all actual, consequential and incidental losses and damages,

25   according to proof;

26       55.    For pre-judgment interest on any unpaid wages from the date such

27   amounts were due, or as otherwise provided by law; and

28       56.    For such other and further relief as the Court may deem equitable

1    and appropriate.

2                        **As to the Tenth Cause of Action**

3          57.    That the Court declare, adjudge and decree that Defendants violated

4    California Labor Code section 2802 by willfully failing to reimburse and/or

5    indemnify all business-related expenses and costs incurred by Plaintiffs and class

6    members;

7          58.    For unpaid business-related expenses and such general and special

8    damages as may be appropriate;

9          59.    For pre-judgment interest on any unpaid business-related expenses

10   from the date such amounts were due, or as otherwise provided by law;

11         60.    For all actual, consequential, and incidental losses and damages,

12   according to proof;

13         61.    For attorneys' fees and costs pursuant to California Labor Code

14   section 2802(c), or as otherwise provided by law; and

15         62.    For such other and further relief as the Court may deem equitable

16   and appropriate.

17                     **As to the Eleventh Cause of Action**

18         63.    That the Court declare, adjudge and decree that Defendants violated

19   the following California Labor Code provisions as to Plaintiffs and/or other

20   aggrieved employees: 510 and 1198 (by failing to pay all overtime

21   compensation); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least

22   minimum wages for all hours worked); 226.7, 512(a), 516, and 1198 (by failing

23   to provide all meal periods); 226.7, 516, and 1198 (by failing to authorize and

24   permit all rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate

25   wage statements and maintain accurate payroll records); 227.3 (by failing to pay

26   all vested vacation days upon termination); 201 and 202 (by failing to timely pay

27   all earned wages upon termination); 204 (by failing to timely pay all earned

28   wages during employment); 246 (by failing to properly calculate sick leave pay);

450 (by compelling and/or coercing employees to patronize employer's business); 1198 and the applicable IWC Wage Order (by failing to provide reporting time pay); 1198 and the applicable IWC Wage Order (by failing to provide split-shift pay); 1198 and the applicable IWC Wage Order (by failing to provide suitable resting facilities); and 2802 (by failing to reimburse business expenses);

64.    For civil penalties pursuant to the California Labor Code, including sections 210, 226.3, 248.5, 256, 558, 1174.5, 2699(a), (f), and (g), for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 227.3, 246, 450, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

65.    For attorneys' fees and costs pursuant to California Labor Code section 2699(g)(1), and any and all other relevant statutes, for Defendants' violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 227.3, 246, 450, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

66.    For pre-judgment and post-judgment interest as provided by law; and

67.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Twelfth Cause of Action**

68.    That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiffs and class members all overtime wages due to them, failing to provide Plaintiffs and class members all minimum wages due to them, failing to provide Plaintiffs and class members all meal periods, failing to authorize and permit Plaintiffs and class members to take all rest periods, failing to provide Plaintiffs and class members accurate and complete wage statements, failing to maintain accurate payroll records for Plaintiffs and class members, failing to pay all vested vacation wages, failing to timely pay Plaintiffs and class

members all earned wages during employment, failing to properly calculate Plaintiff Cuevas's and class members' sick leave pay, failing to pay Plaintiffs and class members reporting time pay, failing to properly compensate Plaintiff Cuevas and class members for split shifts, and failing to reimburse Plaintiffs and class members for business-related expenses, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

69.    For restitution of unpaid wages to Plaintiffs and all class members and prejudgment interest from the day such amounts were due and payable;

70.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

71.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

72.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Thirteenth Cause of Action**

73.    That the Court declare, adjudge and decree that Defendants' conduct of denying Plaintiffs and class members the statutory benefits guaranteed under California Labor Code section 226.7 constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

74.    For restitution of the statutory benefits under California Labor Code section 226.7 unfairly withheld from Plaintiffs and class members and prejudgment interest from the day such amounts were due and payable;

75.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California

1    Business & Professions Code sections 17200, *et seq.*;

2        76.    For reasonable attorneys' fees and costs of suit incurred herein

3    pursuant to California Code of Civil Procedure section 1021.5;

4        77.    For pre-judgment and post-judgment interest as provided by law;

5    and

6        78.    For such other and further relief as the Court may deem equitable and

7    appropriate.

8

9    Dated: March 24, 2023                    Respectfully submitted,

10

11                                            Capstone Law APC

12                                     By: _____

13                                            Robert Drexler
                                              Molly DeSario
14                                            Jonathan Lee

15                                            Attorneys for Plaintiffs Daniel Cuevas
                                              and Alexis Zepeda Coutts

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

MAO SHIOKURA
310.712.8030 Direct
Mao.Shiokura@capstonelawyers.com

December 21, 2022

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/308)

Subject:          *Daniel Cuevas v. Claire's Boutiques, Inc.*

Dear PAGA Administrator:

This office represents Daniel Cuevas in connection with his claims under the California Labor Code.  Mr. Cuevas was an employee of CLAIRE'S BOUTIQUES, INC. ("CBI").

The employer may be contacted directly at the address below:

CLAIRE'S BOUTIQUES, INC.
3 SW 129TH AVENUE
PEMBROKE PINES, FL 33027

Mr. Cuevas intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA").  Mr. Cuevas seeks relief on behalf of himself, the State of California, and other persons who are or were employed by CBI in California as a non-exempt, hourly paid employee and who received at least one wage statement ("aggrieved employees").  This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

CBI employed Mr. Cuevas as a non-exempt, hourly paid Third Key Holder from approximately December 2018 to February 2022.  Mr. Cuevas worked at CBI's retail store located in Ontario, California. During his employment, Mr. Cuevas typically worked five (5) or more hours per day and five (5) days per week.  Mr. Cuevas's job duties included, without limitation, opening and closing the store, completing bank deposits, making sales, assisting customers, performing ear piercings, cleaning and organizing the stockroom, handling incoming shipments, and traveling to off-site storage units and other store locations to pick up or drop off merchandise.

CBI has committed one or more of the following Labor Code violations against Mr. Cuevas, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c):[1]

---
[1] These facts, theories, and claims are based on Mr. Cuevas's experience and counsel's review of those records currently available relating to Mr. Cuevas's employment.  Discovery conducted in litigation of wage and hour

1

**CBI's Company-Wide and Uniform Payroll and HR Practices**

CLAIRE'S BOUTIQUES, INC. is a Michigan corporation.  CBI is a specialty retailer of jewelry and accessories for young women, teens, tweens, and kids.  CBI owns and operates approximately 1,400 store locations in the United States, including approximately 130 retail store locations California.  Upon information and belief, CBI maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Pembroke Pines, Florida, for all non-exempt, hourly paid employees working for CBI in California, including Mr. Cuevas and other aggrieved employees.  At all relevant times, CBI issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Mr. Cuevas and other aggrieved employees, regardless of their location or position.

Upon information and belief, CBI maintains a centralized Payroll department at its corporate headquarters in Pembroke Pines, Florida, which processes payroll for all non-exempt, hourly paid employees working for CBI in California, including Mr. Cuevas and other aggrieved employees.  Further, CBI issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Mr. Cuevas and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended.  In other words, CBI utilized the same methods and formulas when calculating wages due to Mr. Cuevas and other aggrieved employees in California.

**Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime**

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.  The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

CBI willfully failed to pay all overtime wages owed to Mr. Cuevas and other aggrieved employees.  During the relevant time period, Mr. Cuevas and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant time period, CBI had a policy and/or practice of discouraging and impeding Mr. Cuevas and other aggrieved employees from recording hours worked that were outside of their scheduled shifts in order to limit the amount of overtime employees could accrue.  On information and belief, this limitation on overtime accrual was based on a company-wide policy of staffing store locations strictly based on the labor hours or labor budget set by corporate.  This policy of limiting overtime, coupled with CBI's understaffing policy, as well as the assignment of sales quotas and heavy workloads (*see infra*), led Mr. Cuevas and other aggrieved employees to work off-the-clock before and after their scheduled shifts in order to complete their assigned tasks.

---

claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations).  Thus, Mr. Cuevas reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

As a result of this restriction on overtime accrual, CBI forced Mr. Cuevas and other aggrieved employees to perform work off-the-clock outside of their scheduled shifts, such as setting up for ear piercings; cleaning the backroom; assisting customers; choosing accessories from the store's sales floor to wear for the day, scanning them into the system, and donning them; and completing training assignments before clocking in for their scheduled shifts. As a further example, after clocking out, Mr. Cuevas and other aggrieved employees performed work, setting up for the store layout update; performing closing shift duties, including cleaning and locking the store, taking out the trash, and driving to the bank and depositing money from the cash registers; and responding to phone calls and text messages from management on their personal cellular phones. Moreover, before or after his scheduled shifts or on his off-days, Mr. Cuevas would travel to a nearby storage unit or another store location to pick up and drop off merchandise, but was not paid for this time spent working. Thus, CBI failed to track this time spent working before and after scheduled shifts, and Mr. Cuevas and other aggrieved employees received no or incomplete compensation for this time.

Second, during the relevant period, CBI had a company-wide loss prevention policy requiring employees to undergo mandatory security checks by a managerial employee before leaving the store premises after clocking out at the end of a shift and/or after clocking out for a meal period. Although CBI's requirement that other aggrieved employees undergo security checks was mandatory, CBI did not compensate them for the time it took them to wait and undergo these checks. As a result of these loss prevention and security policies and/or practices, other aggrieved employees were subject to CBI's control after they had clocked out for meal periods and/or their shifts, but were not compensated for this time.

Third, during the relevant period, CBI had a company-wide "on-call" policy, whereby it scheduled Mr. Cuevas and other aggrieved employees to work "on-call," or on standby. These "on-call" shifts worked to CBI's benefit and to the detriment of Mr. Cuevas and other aggrieved employees. By utilizing "on-call" shifts, CBI received the benefit of being able to maximize revenue by having a standby workforce it could choose to utilize or not, depending on store traffic and sales metrics, without incurring the cost of compensating employees who show up to work and work a full or partial scheduled day's work.

When scheduled for an "on-call" or standby shift, Mr. Cuevas and other aggrieved employees were required to wait for the store to call them 1-2 hours prior to their scheduled standby shift. Mr. Cuevas and other aggrieved employees were engaged to wait and could not engage in personal activities as they had to be ready to travel to their respective store locations on short notice and work their standby shift. When scheduled to be "on-call" for a standby shift, Mr. Cuevas and other aggrieved employees were controlled by CBI because they were forced to put their lives on hold and could not use that time freely for their own purposes. For example, Mr. Cuevas refrained from making plans altogether while "on-call" for a standby shift because he knew that he had to drop whatever he was doing at a moment's notice if he was instructed to work his standby shift. CBI did not pay Mr. Cuevas and other aggrieved employees for the time they spent waiting to hear whether they needed to report for work at their store locations on days they ultimately were not called in.

Fourth, as stated, CBI had, and continues to have, a company-wide policy and/or practice of staffing its store locations strictly based on a labor budget set by the corporate office. CBI's use of a labor budget resulted in chronic understaffing, such that there were too few employees on duty to handle the heavy workload, including pressure to meet daily and weekly sales goals and ear-piercing quotas, and provide uninterrupted meal period coverage. Mr. Cuevas and other aggrieved employees were denied uninterrupted 30-minute meal periods, and were required to work through and/or to return early from meal periods. Furthermore, CBI had a company-wide practice of failing to adhere to a schedule of meal periods, which further caused Mr. Cuevas and other aggrieved employees to not be relieved of their duties for compliant meal periods. As a result of this lack of meal period coverage, Mr. Cuevas and other aggrieved employees were not always afforded thirty (30) minute meal periods during shifts when they were entitled to receive a meal period and instead continued to work during unpaid meal periods, time for

which they were not paid. For example, CBI expected Mr. Cuevas and other aggrieved employees to continue working through all or parts of their meal periods to assist customers, handle loss prevention incidents, and address issues with the cash registers so other sales associates were able to continue making sales and meet the sales goals set by CBI. Moreover, on information and belief, because CBI frowned upon employees accruing meal period penalties, CBI adjusted other aggrieved employees' time records to reflect compliant meal periods, even when they did not receive a compliant meal period, in order to strictly limit meal penalties that CBI would otherwise owe. Thus, Mr. Cuevas and other aggrieved employees performed work during meal periods for which they were not paid.

CBI knew or should have known that, as a result of these company-wide practices and/or policies, Mr. Cuevas and other aggrieved employees were performing their assigned duties off-the-clock before and after their shifts and during meal periods, and were suffered or permitted to perform work for which they were not paid. Because Mr. Cuevas and other aggrieved employees regularly worked shifts of eight (8) hours a day or more, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.

Furthermore, CBI did not pay other aggrieved employees the correct overtime rates for the recorded overtime hours that they generated. In addition to an hourly wage, CBI paid other aggrieved employees hazard pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration. However, in violation of the California Labor Code, CBI failed to incorporate all remunerations, including hazard pay, incentive pay, and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rates. Therefore, during times when other aggrieved employees worked overtime and received these other forms of pay, CBI failed to pay all overtime wages by paying a lower overtime rate than required.

CBI's failure to pay Mr. Cuevas and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

## <u>Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages</u>

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined in IWC Wage Order No. 7-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

First, as set forth above, due to CBI's restrictions on overtime accrual, CBI systematically failed to pay Mr. Cuevas and other aggrieved employees for actual hours worked before and after their scheduled shifts. As stated, Mr. Cuevas and other aggrieved employees were required to perform work-related tasks while off-the-clock, such as setting up for ear piercings, cleaning the backroom, assisting customers, completing trainings, donning store accessories prior to start of their shifts, setting up for the store layout update, performing closing shift duties, driving to the bank and making bank drops, responding to phone calls and text messages from management, and traveling to storage or store locations to pick up or drop off merchandise. Other aggrieved employees also spent time submitting to off-the-clock security checks, time for which they were not paid.

Second, as stated above, CBI had a company-wide "on-call" policy, whereby it required Mr. Cuevas and other aggrieved employees to wait to be called by CBI when scheduled for "on-call" or standby shifts.

4

However, CBI did not pay Mr. Cuevas and other aggrieved employees at least minimum wages for the time they spent waiting to see if they were needed at the store.

Third, as also stated, due to CBI's uniform practices of utilizing labor budgets, understaffing, assignment of heavy workloads, pressure to meet sales goals, failure to adhere to a schedule for meal periods, and subsequent lack of meal period coverage, Mr. Cuevas and other aggrieved employees were impeded from taking all uninterrupted meal periods to which they were entitled and were required to work during their meal periods, time for which they were not paid.  Moreover, as stated above, on information and belief, in order to limit meal penalties that CBI would otherwise owe, CBI adjusted employee time records to reflect compliant meal periods, but required other aggrieved employees to continue working, time for which they were not paid.

Thus, CBI did not pay minimum wages for all hours worked by Mr. Cuevas and other aggrieved employees.  To the extent that these off-the-clock hours did not qualify for overtime premium payment, CBI did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Accordingly, CBI regularly failed to pay at least minimum wages to Mr. Cuevas and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

## **Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a), 516, and 1198 and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012).  Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

First, as stated, CBI had, and continues to have, a company-wide policy and/or practice of understaffing its store locations due to labor budgeting, which, combined with heavy workloads and a failure to adhere to a schedule for meal periods, has resulted in a lack of meal period coverage and prevented Mr. Cuevas and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled.  Moreover, as stated, CBI had a company-wide policy and/or practice of requiring that Mr. Cuevas and other aggrieved employees continue working through all or parts of their meal periods to assist customers, handle loss prevention incidents, and address issues with the cash registers so other associates were able to continue making sales and meet the sales goals set by CBI.  Additionally, as stated, pursuant to CBI's loss prevention policy, other aggrieved employees were required to submit to off-the-clock security checks, after they had already clocked out for their meal periods.

5

As a result, Mr. Cuevas and other aggrieved employees had to work through all or part of their meal periods, had their meal periods interrupted, and/or had to wait extended periods of time before taking meal periods. For example, Mr. Cuevas missed his meal periods or took them late due to understaffing, lack of coverage, and in order to meet the store's customer demand. As a further example, Mr. Cuevas's meal periods were interrupted in order to address potential loss prevention incidents, other employees requesting his assistance with cash register issues, and heavy customer foot traffic in the store.

Second, as stated, on information and belief, because CBI frowned upon employees accruing meal period penalties, CBI's management would adjust other aggrieved employees' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by CBI.

Third, CBI did not provide other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. Mr. Cuevas and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

Moreover, CBI had a company-wide policy of requiring all newly hired employees to sign blanket meal period waivers at or near their time of hire. CBI took the position that non-exempt, hourly paid employees had waived their rights to first and/or second meal periods for the entirety of their employment and, on that basis, did not provide them with all meal periods to which they were entitled. Moreover, CBI's meal period waiver form requires employees provide advance and/or written notice should they wish to revoke the waiver. CBI's presumption that meal periods would not be provided for shifts in excess of five (5) hours but less than six (6) hours and/or for shifts in excess of ten (10) hours but less than twelve (12) hours, due to blanket meal period waivers signed at or near the time of hire, and imposition on employees to revoke the waivers in writing and/or one day in advance, discouraged and impeded Mr. Cuevas and other aggrieved employees from taking all meal periods to which they were entitled.

Furthermore, an employer's obligation to provide a meal period is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay.

*Id*. (citing Cal. Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)). That CBI requires Mr. Cuevas and other aggrieved employees to sign meal period waivers simultaneously at or near their time of hire (as opposed to on a specific work day) renders them invalid and unenforceable, because CBI's obligation to provide Mr. Cuevas and other aggrieved employees with meal periods did not arise until they had employed them for a full five (5) hours.

At all times mentioned herein, CBI knew or should have known that as a result of its policies, Mr. Cuevas and other aggrieved employees were not actually relieved of all duties to take timely, uninterrupted meal periods. CBI further knew or should have known that it did not pay Mr. Cuevas and other aggrieved employees meal period premiums when meal periods were late, interrupted, shortened, and/or missed.

6

Furthermore, CBI engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided.  Because of this practice and/or policy, Mr. Cuevas and other aggrieved employees have not received premium pay for missed, late, and interrupted meal periods.  Alternatively, to the extent that CBI did pay other aggrieved employees for missed, late, and interrupted meal periods, CBI did not pay other aggrieved employees at the correct rate of pay for premiums because CBI systematically failed to include all forms of compensation, such as hazard pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, CBI failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198.  Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

## Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods

California Labor Code sections 226.7, 516, and 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, CBI regularly failed to authorize and permit Mr. Cuevas and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, CBI's company-wide practices of understaffing and assignment of heavy workloads prevented Mr. Cuevas and other aggrieved employees from being relieved of all duty to take their rest periods.  Additionally, CBI failed to schedule rest periods, which, coupled with CBI's failure to provide adequate rest period coverage, further led to Mr. Cuevas and other aggrieved employees not being authorized and permitted to take compliant rest periods.

Furthermore, upon information and belief, CBI maintained a company-wide on-premises rest period policy, which mandated that Mr. Cuevas and/or other aggrieved employees remain on CBI's premises during their rest periods.  Because Mr. Cuevas and/or other aggrieved employees were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as running personal errands.  Thus, CBI effectively maintained control over Mr. Cuevas and/or other aggrieved employees during rest periods.

As a result of CBI's practices and policies, Mr. Cuevas and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.  For example, Mr. Cuevas would miss his rest periods to meet customer demand and due to a lack of rest period coverage.  And, even when Mr. Cuevas was

finally able to take his rest periods, they were cut short due to heavy workload and increase in customer service demand.

CBI also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized or permitted. Because of this practice and/or policy, Mr. Cuevas and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that CBI did pay other aggrieved employees one (1) additional hour of premium pay for missed rest periods, CBI did not pay other aggrieved employees at the correct rate of pay for premiums because CBI failed to include all forms of compensation, such as hazard pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, CBI failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198. Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. CBI has not provided Mr. Cuevas and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wage statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, CBI has knowingly and intentionally provided Mr. Cuevas and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, CBI issued uniform wage statements to Mr. Cuevas and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages, meal and rest period premiums, and/or paid sick leave, and the corresponding number of hours worked at each hourly rate. Specifically, CBI violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

Because CBI did not record the time Mr. Cuevas and other aggrieved employees spent working off-the-clock and/or deducted time from their records for meal periods that were missed and/or interrupted (and therefore time for which they should have been paid), CBI did not list the correct amount of gross wages and net wages earned by Mr. Cuevas and other aggrieved employees, in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, CBI failed to accurately list the total number of the hours worked by Mr. Cuevas and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Additionally, because CBI did not calculate other aggrieved employees' regular rate of pay correctly for purposes of paying overtime wages meal and rest period premiums, and/or paid sick leave, CBI did not list the correct amount of gross wages in compliance with section 226(a)(1) and did not list the correct amount of net wages in violation of section 226(a)(5). CBI also failed to correctly list all applicable

8

hourly rates in effect during the pay period, namely, correct rates of pay for overtime wages and/or meal and rest period premiums, in violation of section 226(a)(9).

The wage statement deficiencies also include, without limitation, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ." Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), CBI willfully failed to maintain accurate payroll records for Mr. Cuevas and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, CBI engaged in company-wide practices and/or policies of failing to record actual hours worked (including falsifying time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken), and thereby failed to keep accurate records of work period and meal period start and end times for Mr. Cuevas and other aggrieved employees in violation of section 1198. Furthermore, in light of CBI's failure to provide other aggrieved employees with second 30-minute meal periods to which they were entitled, CBI kept no records of meal start and end times for second meal periods.

Because CBI failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Mr. Cuevas and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full. Instead, Mr. Cuevas and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

## Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during

which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, CBI failed to pay Mr. Cuevas and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, sick leave pay, and/or reporting time pay, within any time period specified by California Labor Code section 204.

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 201 and 202 – Failure to Timely Pay Final Wages Upon Termination

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

On information and belief, CBI had a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202.  For example, Mr. Cuevas quit his employment on or about February 14, 2022.  However, CBI did not provide Mr. Cuevas with his final paycheck until approximately one week later.  Thus, CBI failed to pay Mr. Cuevas his final wages within (72) hours after he quit, in violation of Labor Code section 202.

Additionally, CBI willfully failed to pay Mr. Cuevas and other aggrieved employees who are no longer employed by CBI all their earned wages, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, all vested vacation pay, sick leave pay, and/or reporting time pay, either at the time of discharge, or within seventy-two (72) hours of their leaving CBI's employ.

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 227.3 – Failure to Pay Vested Vacation Wages

California Labor Code section 227.3 provides that if a contract of employment or employer policy provides for paid vacations and an employer terminates an employee, all vested vacation shall be paid to the employee at the employee's final rate of pay, in accordance with such contract of employment or employer policy respecting eligibility or time served.  Vacation time vests on a pro-rata basis and, upon termination, an employee is entitled to a pro rata share of vested vacation pay.  An employer may not require an employee to forfeit earned but unused vacation pay.

10

CBI had a company-wide policy and practice of failing to pay Mr. Cuevas and other aggrieved employees vested vacation wages that were owed to them at the end of their employment, in violation of California Labor Code section 227.3. Specifically, CBI failed to correctly calculate and pay all earned vested vacation hours due to the hours Mr. Cuevas and other aggrieved employees worked off-the-clock, pursuant to company-wide policies and/or practices. CBI's failure to pay Mr. Cuevas and other aggrieved employees all vested vacation wages at the end of their employment has caused a forfeiture of vested vacation wages in violation of California Labor Code section 227.3.

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**Violation of California Labor Code § 246 – Unpaid Sick Leave**

At all relevant times herein, California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Further, Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

During the relevant time period, CBI did not pay other aggrieved employees the correct sick leave rates of pay. In addition to an hourly wage, CBI paid other aggrieved employees hazard pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration. However, in violation of the California Labor Code, CBI failed to incorporate all remunerations, including hazard pay, incentive pay, and/or nondiscretionary bonuses, into the calculation of the regular rate of pay for purposes of calculating the sick leave rate. Therefore, during times when other aggrieved employees took sick leave and received these other forms of pay, CBI failed to pay all sick leave benefits by paying a lower sick leave rate than required. Specifically, CBI paid other aggrieved employees sick leave based on their hourly rate of pay instead of their regular rate of pay.

CBI's failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to other aggrieved employees on a company-wide basis, in violation of Labor Code 246(l). Other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 248.5 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 450 – Compelling Patronization**

California Labor Code section 450 provides that an employer may not "compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of anything of value." An employer violates section 450 by forcing an employee to patronize the employer's business in the purchase of a company-provided good.

CBI had a company-wide policy of requiring all employees to purchase uniform items, such as jewelry, purses, and other accessories, directly from CBI's stores. Other aggrieved employees were required to purchase multiple accessory items from CBI in order to wear as a "uniform" during their shifts.

11

CBI's conduct of compelling and/or coercing other aggrieved employees to purchase goods from them is in violation of California Labor Code section 450.  Other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

## Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 13(B) – Failure to Provide Suitable Resting Facilities

California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.  California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."  California Code of Regulations, Title 8, section 11070(13)(B) provides that "[s]uitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours."

CBI's California stores are generally similar in their layout and design and there was, and continues to be, space that allows for a resting facility that employees may use to cease work and recover during meal or rest periods.  CBI could have provided Mr. Cuevas and other aggrieved employees with a resting facility within its stores, with reasonable or no modification, but instead denied, and continues to deny, employees suitable areas to rest (e.g., a breakroom).  As a result, Mr. Cuevas and other aggrieved employees were forced to adjust to areas not conducive to resting, such as areas not designated or reserved for their rest, such as in the management office or in their personal vehicles.

CBI did not provide Mr. Cuevas and other aggrieved employees with suitable resting facilities during their work hours, particularly during rest or meal periods.  In other words, during the times when Mr. Cuevas and other aggrieved employees were legally allowed to forgo assigned tasks, as in during a meal or rest period, CBI denied them any area within their stores to cease work and recover.  Moreover, CBI did not inform Mr. Cuevas and other aggrieved employees of their rights to suitable resting facilities under California law.

As a result of CBI's company-wide policy and/or practice of denying employees any area to rest within their stores and company-wide failure to provide resting facilities in its stores, Mr. Cuevas and other aggrieved employees were forced to adjust to areas not conducive to resting, such as sitting on step stools or the floor, or search for facilities outside their stores to cease work and recover.  CBI's failure to provide suitable resting facilities to Mr. Cuevas and other aggrieved employees violates California Labor Code section 1198 and IWC Wage Order No. 7-2001, subdivision 13(B).

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, and seek injunctive relief to bring CBI into compliance with California's resting facilities requirements, pursuant to Labor Code sections 1194.5 and/or 2699(a), (f)-(g).

## Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 14(A) – Failure to Provide Suitable Seating

California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.  California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."  California Code of Regulations, Title 8, section 11070(14)(A) provides that "[a]ll working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats."

12

"The 'nature of the work' refers to an employee's tasks performed at a given location for which a right to a suitable seat is claimed, rather than a 'holistic' consideration of the entire range of an employee's duties anywhere on the jobsite during a complete shift. If the tasks being performed at a given location reasonably permit sitting, and provision of a seat would not interfere with performance of any other tasks that may require standing, a seat is called for." *Kilby v. CVS Pharmacy, Inc.*, 368 P.3d 554, 558 (Cal. 2016). "Whether the nature of the work reasonably permits sitting is a question to be determined objectively based on the totality of the circumstances. An employer's business judgment and the physical layout of the workplace are relevant but not dispositive factors. The inquiry focuses on the nature of the work, not an individual employee's characteristics." *Id.* The burden of proof to show suitable seating is not available is on the employer. *Id.* at 568. In other words, the employer must show that compliance is "infeasible because no suitable seating exists." *See id.*

CBI's California stores are generally similar in their layout and design and there was, and continues to be, space behind cash wraps to allow for the presence and use of a seat or stool by Mr. Cuevas and other aggrieved employees (with reasonable or no modification to these work areas) during the performance of their work duties. CBI could provide Mr. Cuevas and other aggrieved employees with a seat or stool at its cash wraps, but instead denies employees seating and forces other aggrieved employees to stand throughout the day.

Mr. Cuevas and other aggrieved employees spent a portion of their day behind or at these cash wraps. The nature of the work of an employee performing cashier duties can reasonably be accomplished from a seated position. However, as set forth herein, CBI systematically, and on a company-wide basis, does not provide seats or stools at or near the cash wraps, forcing Mr. Cuevas and other aggrieved employees to stand throughout their work shifts.

CBI violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(14)(A) because Mr. Cuevas and other aggrieved employees were not allowed to sit, even when it would not have interfered with the performance of their duties, nor were they provided with suitable seats. CBI's management did not inform Mr. Cuevas and other aggrieved employees that they were allowed to sit down, provide any means for them to sit down, or mention any policy regarding sitting.

As a result of CBI's company-wide policy and/or practice of prohibiting employees from sitting during their shifts and company-wide failure to provide suitable seating, Mr. Cuevas and other aggrieved employees were forced to stand during shifts and denied seats. CBI's failure to provide suitable seating to Mr. Cuevas and other aggrieved employees violates California Labor Code section 1198 and IWC Wage Order No. 7-2001, subdivision 14(A).

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, and seek injunctive relief to bring CBI into compliance with California's seating requirements, pursuant to Labor Code sections 1194.5 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 14(B) – Failure to Provide Suitable Seating**

California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful." California Code of Regulations, Title 8, section 11070(14)(B) provides that "[w]hen employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area

13

and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

The IWC states that subdivision 14(B) applies during "lulls in operation" when an employee, while still on the job, is not then actively engaged in any duties. *Kilby v. CVS Pharmacy, Inc.*, 368 P.3d 554, 565 (Cal. 2016), citing IWC, 1976 Wage Orders, Summary of Basic Provisions, Seats. When taken together, an employee is entitled to a seat under subdivision 14(A) if his or her actual tasks at a discrete location make seated work feasible, while working there. *Id.* However, if other job duties take the employee to a different location where he or she must perform tasks requiring standing, the employee would be entitled to a seat under subdivision 14(B) during "lulls in operation." *Id.*

CBI's California stores are generally similar in their layout and design and there was, and continues to be, space near their work areas (with reasonable or no modification to these work areas) to allow for the presence and use of a seat or stool by Mr. Cuevas and other aggrieved employees during lulls in operation. CBI could have provided Mr. Cuevas and other aggrieved employees with a seat or stool in its work areas, but instead denied, and continues to deny, employees seating, forcing them to stand throughout the day.

CBI did not provide Mr. Cuevas and other aggrieved employees with seats or stools in reasonable proximity to their work areas to allow them to use seats when it would not interfere with the performance of their duties for times when they were not engaged in active duties that require standing. In other words, to the extent Mr. Cuevas and other aggrieved employees engaged in duties in which the nature of the work required standing, CBI denied them the use of seats nearby during lulls in their work duties. Moreover, CBI did not inform Mr. Cuevas and other aggrieved employees of their rights to a seat or stool under California law.

As a result of CBI's company-wide policy and/or practice of prohibiting employees from sitting at any time, even when they were not engaged in active duties requiring standing, and company-wide failure to provide seats in reasonable proximity to their work areas, Mr. Cuevas and other aggrieved employees were forced to stand during shifts and denied seats. CBI's failure to provide suitable seating to Mr. Cuevas and other aggrieved employees violates California Labor Code section 1198 and IWC Wage Order No. 7-2001, subdivision 14(B).

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, and seek injunctive relief to bring CBI into compliance with California's seating requirements, pursuant to Labor Code sections 1194.5 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 5(A) – Failure to Pay Reporting Time Pay**

California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11070(5)(A) provides that "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." The "primary purpose of the reporting time regulation" is "to guarantee at least partial compensation for employees who report to work

14

expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer." *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556 (2012).

During the relevant time period, CBI violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(5)(A), because CBI failed to pay Mr. Cuevas and other aggrieved employees reporting time pay when they reported to work for their scheduled shift but were put to work for less than half of the usual or scheduled day's work.

As stated, CBI had a company-wide "on-call" policy, whereby it scheduled Mr. Cuevas and other aggrieved employees to work "on-call," or on standby. When scheduled for a "on-call" or standby shift, Mr. Cuevas and other aggrieved employees regularly presented themselves as ready for work by waiting for the store to call them before their scheduled standby shift and would await instructions on whether to report to the store. When this occurred, CBI did not pay Mr. Cuevas and other aggrieved employees for at least half of their scheduled day's work or the minimum reporting time pay when they were subject to CBI's "on-call" policy and were ultimately not called.

Also, CBI had a company-wide practice of sending other aggrieved employees home early from their shifts, including before they had worked at least half of their usual or scheduled shift, but would not pay other aggrieved employees for half of their usual or scheduled shift. For example, on information and belief, other aggrieved employees were sent home before they had worked half of their usual or scheduled shift, because business was slow and pursuant to labor budget limitations, but were only paid for the time that they had worked. Although other aggrieved employees would report to work based on the schedule that CBI provided to them, CBI would send them home before they had worked at least half of their scheduled shifts without giving them reporting time pay.

Accordingly, Mr. Cuevas and other aggrieved employees were not properly compensated with reporting time pay in violation of California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(5)(A).

Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

### Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 4(C) – Failure to Pay Split-Shift Premiums

California Labor Code section 1198 provides that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11070(4)(C) provides that, "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment." California Code of Regulations, Title 8, defines a split shift as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

CBI willfully violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(4)(C), because CBI failed to pay Mr. Cuevas and other aggrieved employees a split-shift premium when they returned to work for an additional shift in the same day, after having been clocked out for several hours. For example, Mr. Cuevas was required to open the store and work the opening two

15

(2) hours and then was told to clock out for several hours before returning to work in the late afternoon and/or evening to work the closing shift.  When this occurred, CBI did not always pay Mr. Cuevas and other aggrieved employees an additional hour at minimum wage.  Accordingly, CBI required Mr. Cuevas and other aggrieved employees to work split shifts but failed to pay them an additional hour at minimum wage, in violation of California Labor Code section 1198.

CBI's failure to provide Mr. Cuevas and other aggrieved employees with split-shift pay when they returned to work for an additional shift in the same day, after having been clocked out for several hours, violates California Labor Code section 1198 and California Code of Regulations Title 8, Section 11070(4)(C).  Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

### Violation of California Labor Code § 2802 – Unreimbursed Business Expenses

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order No. 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, CBI had a company-wide policy of requiring Mr. Cuevas and other aggrieved employees to utilize their own personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties, but CBI failed to reimburse them for the costs of their work-related mobile device expenses.  Mr. Cuevas and other aggrieved employees were required to use their personal mobile devices for work-related tasks, including responding to calls or text messages from CBI's management and other employees regarding work assignments, scheduling, and inventory.  Additionally, CBI required Mr. Cuevas to use his personal mobile device to take photos of completed paperwork and send the photos to the District Manager.  Further, Mr. Cuevas was required to download the Dayforce mobile application onto his personal cellular phone in order to access his timesheets and paystubs, request days off, and complete trainings.  Other aggrieved employees were required to download WhatsApp in order to communicate with other employees and/or the Claire's mobile application for work-related purposes.  Although CBI required Mr. Cuevas and other aggrieved employees to utilize their personal mobile devices and/or mobile data to carry out their work-related duties, CBI failed to reimburse them for these costs.

Second, during the relevant time period, CBI, on a company-wide basis, required that Mr. Cuevas and other aggrieved employees use their own personal vehicles to run company errands.  For example, Mr. Cuevas was required to use his personal vehicle and drive to the bank to complete a deposit or obtain change for the cash registers.  Additionally, during the relevant time period, Mr. Cuevas was required to use his personal vehicle and run company errands, such as driving to a nearby storage unit or another store location to drop off or pick up necessary merchandise.  Although CBI required Mr. Cuevas and other aggrieved employees to utilize their personal vehicles to carry out their work-related responsibilities, CBI failed to reimburse them for their mileage or travel expenses.

Third, during the relevant time period, CBI required Mr. Cuevas and other aggrieved employees to purchase supplies and equipment necessary for the performance of their duties, but failed to reimburse them for their out-of-pocket costs.  For example, Mr. Cuevas purchased two clipboards for the ear-piercing stations in order to keep the forms organized because CBI failed to provide him with the

necessary supplies required for the store to operate properly and/or meet management's expectations. Although CBI required Mr. Cuevas and other aggrieved employees to purchase supplies and equipment to carry out their work-related responsibilities, CBI failed to reimburse them for their out-of-pocket costs to purchase necessary supplies and equipment.

CBI could have provided Mr. Cuevas and other aggrieved employees with the actual equipment for use on the job, such as company mobile devices, company vehicles, and supplies and equipment; or, CBI could have reimbursed employees for their mobile device usage; mileage; travel expenses; supply and equipment expenses. Instead, CBI passed these operating costs off onto Mr. Cuevas and other aggrieved employees. At all relevant times, Mr. Cuevas did not earn at least two (2) times the minimum wage.

Thus, CBI had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802. Mr. Cuevas and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

### California Labor Code § 558(a)

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." CBI, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Mr. Cuevas's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Mr. Cuevas seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Mr. Cuevas, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for himself, all other aggrieved employees, and the State of California against CBI for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 227.3, 246, 450, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

Therefore, on behalf of all aggrieved employees, Mr. Cuevas seeks all applicable penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

Mao Shiokura
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
(310) 556-4811

Best Regards,

Mao Shiokura

Copy: CLAIRE'S BOUTIQUES, INC. (via U.S. Certified Mail)

Capstone Law, APC
1875 Century Park, East, 1000
Los Angeles, CA. 90067

7022 2410 0000 2406 4437

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

OFFICIAL USE

CLAIRE'S BOUTIQUES, INC.
3 SW 129TH AVENUE
PEMBROKE PINES, FL 33027

7022 2410 0000 2406 4437

CLAIRE'S BOUTIQUES, INC.
3 SW 129TH AVENUE
PEMBROKE PINES, FL 33027

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3.
- Print your name and address on the reverse
  so that we can return the card to you.

CLAIRE'S BOUTIQUES, INC.
3 SW 129TH AVENUE
PEMBROKE PINES, FL 33027

9590 9402 1512 5362 2475 49

2. Article Number (Transfer from service label)
7022 2410 0000 2406 4437

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    □ Agent
                                     □ Addressee
B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Return Receipt for Merchandise
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3.
Print your name and address on the reverse
so that we can return the card to you.

CLAIRE'S BOUTIQUES, INC.
3 SW 129TH AVENUE
PEMBROKE PINES, FL 33027

9590 9402 1512 5362 2475 49

2. Article Number *(Transfer from service label)*

7022 2410 0000 2406 4437

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Mail Restricted Delivery
($____)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt